FILED BY CLERK

JUN 28 2007

COURT OF APPEALS
DIVISION TWO



IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


MANU DUBE,                                )      2 CA-CV 2006-0176
                                          )      DEPARTMENT A
                 Plaintiff/Appellant,     )
                                          )      **O P I N I O N**
            v.                            )
                                          )
PETER LIKINS and JANE DOE LIKINS,         )
husband and wife; RICHARD C.              )
POWELL and JANE DOE POWELL,               )
husband and wife; THOMAS J. HIXON         )
and JANE DOE HIXON, husband and           )
wife; and STATE OF ARIZONA BOARD          )
OF REGENTS,                               )
                                          )
                 Defendants/Appellees.    )
                                          )


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20044924

Honorable Deborah Bernini, Judge

AFFIRMED IN PART;
REVERSED IN PART AND REMANDED


Raven, Awerkamp & Clancy, P.C.
  By Don Awerkamp and Ivelisse Bonilla-Torrado                        Tucson
                                            Attorneys for Plaintiff/Appellant


Terry Goddard, Arizona Attorney General
  By Rebecca J. Herbst                                               Phoenix
                                          Attorneys for Defendants/Appellees


H O W A R D, Presiding Judge.

¶1 Appellant Manu Dube appeals from the trial court's judgment dismissing his complaint pursuant to Rule 12(b)(6), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, and granting judgment in favor of appellees Peter Likins, former President of the University of Arizona; Richard Powell, Vice President for Research and Graduate Studies; Thomas Hixon, Associate Vice President for Research and Graduate Studies; and the State of Arizona Board of Regents ("the University Officials"). Dube argues the trial court erred when it found his claims were untimely and that his allegations of defamation and tortious interference with a business expectancy failed to state a claim upon which relief can be granted. He also argues that even if his complaint was insufficient he should have been afforded the opportunity to amend it. We affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

## Background

¶2 When reviewing the trial court's grant of a motion to dismiss a complaint for failure to state a claim, "'we must take the alleged facts as true.'" *Riddle v. Ariz. Oncology Servs., Inc.*, 186 Ariz. 464, 465, 924 P.2d 468, 469 (App. 1996), *quoting Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n*, 177 Ariz. 256, 258, 866 P.2d 1342, 1344 (1994). In 1998, Dube transferred to the University of Arizona as a post-graduate student. Dr. Chandra Desai was Dube's advisor for his dissertation work. In October 2002, Dube complained to the University that Desai had acted improperly and requested a change in advisor. The University "investigated and evaluated Dube's allegations" and, "[a]fter analyzing the information provided by Dube," it "removed Desai from the Ph.D. committee

2

that would evaluate Dube's dissertation work and replaced [him] with another faculty member." Dube obtained his doctoral degree in May 2004.

¶3 In September 2004, Dube sued Desai and C. Desai, Inc., alleging Desai had tortiously interfered with him "obtaining his Ph.D. at the University of Arizona and with his opportunities to obtain employment." In May or June 2005, in the course of discovery, Dube obtained documents from the University of Arizona. He claims the documents "revealed that various University of Arizona administrators had improperly assisted Desai in his interference with Dube's efforts to obtain his Ph.D. and pursue his career."

¶4 On February 23, 2006, Dube moved to amend his complaint, which the trial court granted, to assert a claim of tortious interference against the University Officials and defamation claims against Likins. Dube filed his amended complaint on March 27, 2006. The University Officials then moved to dismiss the complaint on the ground that both claims were barred by the statute of limitations and failed as a matter of law. The trial court granted the motion and entered final judgment against Dube and in favor of the University Officials.

**Tortious Interference With Business Expectancy**

¶5 Dube first argues that the trial court erred when it dismissed his claim for tortious interference with a business expectancy against the University Officials as untimely. He contends he did not know the facts underlying this claim until he received certain documents in discovery during this litigation. We review de novo a trial court's dismissal of a complaint pursuant to Rule 12(b)(6), Ariz. R. Civ. P., based on its application of a

statute of limitations. *Andrews ex rel. Woodard v. Eddie's Place, Inc.*, 199 Ariz. 240, ¶ 1, 16 P.3d 801, 801-02 (App. 2000).

**¶6** The trial court determined that "many of the claims asserted against [the University Officials were] based upon facts that were known to [Dube] when he filed his first [c]omplaint [on] September 8, 2004, including his claim regarding incorrect information provided to the [Immigration and Naturalization Service (INS)] from 1998 to 2002." Therefore, the court concluded, the discovery rule did not extend the time for filing the amended complaint, and the claim was untimely.

**¶7** Under A.R.S. § 12-821, "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." Accrual for causes of action under § 12-821 is statutorily defined as "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage."[1] A.R.S. § 12-821.01(B); *see also Long v. City of Glendale*, 208 Ariz. 319,

---

[1] Relying on *Lawhon v. L.B.J. Institutional Supply Inc.*, 159 Ariz. 179, 765 P.2d 1003 (App. 1988), Dube argues the trial court erred when it did not apply the discovery rule to his case. In *Lawhon*, Division One of this court held that

> a cause of action "accrues" when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by a *particular* defendant's negligent conduct. The cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation.

*Id*. at 183, 765 P.2d at 1007 (emphasis in original). But § 12-821.01 defines when a cause of action accrues in lawsuits where the defendant is a public entity or employee as when the

4

¶ 9, 93 P.3d 519, 525 (App. 2004). To determine when a cause of action accrues, an analysis of the elements of tortious interference with a business expectancy is necessary. *See Glaze v. Larsen*, 207 Ariz. 26, ¶ 10, 83 P.3d 26, 29 (2004) ("The determination of when a cause of action accrues requires an analysis of the elements of the claim presented.").

**¶8** A plaintiff asserting a claim for tortious interference must allege "'the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.'" *Miller v. Hehlen*, 209 Ariz. 462, ¶ 32, 104 P.3d 193, 202 (App. 2005), *quoting Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 427, 909 P.2d 486, 494 (App. 1995). Accordingly, a cause of action for tortious interference accrues when the plaintiff knew or reasonably should have known of the intentional interference with the plaintiff's business expectancy, resulting in its termination; and the plaintiff realized he or she was damaged by that termination. *See id.; see also* A.R.S. § 12-821.01(B); *Glaze*, 207 Ariz. 26, ¶ 10, 83 P.3d at 29. And "[w]hen discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury." *Doe v. Roe*, 191 Ariz. 313, ¶ 32, 955 P.2d 951, 961 (1998).

---

plaintiff "realizes he or she has been damaged and knows or reasonably should know the cause . . . ." Because the statute defines "accrual" where the defendant is a public entity or public employee, we need not apply the common-law discovery rule or analyze any potential differences.

**¶9** Dube claims that while he was a student at the University from 1998 through 2004, the University Officials reported incorrect information to the INS, failed to share the findings of their investigation of Desai with him, misled him into believing that the investigation was ongoing, and ignored their obligations to conduct an adequate investigation. Dube claims the University Officials' conduct resulted in a delay in obtaining his doctoral degree and his inability to find employment while in school and also after graduation in May 2004. Finally, Dube alleges he was unaware of the University Officials' actions until after discovery began in his case against Desai.

**¶10** Dube specifically stated in his original complaint, filed in September 2004, that the University had reported incorrect information to the INS. And some University employees were necessarily involved in reporting that information. Because he filed his amended complaint in March 2006, more than one year after his initial complaint, this claim is barred by the statute of limitations. But this claim is discrete from Dube's other claims of tortious interference.

**¶11** Given the nature of the remaining allegations of tortious interference with a business expectancy, Dube had no reason to know of the University Officials' alleged involvement or realize that any of his claimed damages were attributable to anyone other than Desai. Based solely on Dube's allegations, the cause of action did not accrue until May 2005, when Dube learned of the University Officials' involvement. And Dube filed an amended complaint in March 2006, within the one-year limitation period set forth in § 12-821. Because Dube's allegations must be taken as true, *see Riddle*, 186 Ariz. at 465, 924

6

P.2d at 469, it was error to dismiss the remainder of Dube's tortious interference claim as untimely. *See Doe*, 191 Ariz. 313, ¶ 32, 955 P.2d at 961.

¶12         Nevertheless, the University Officials claim that Dube had an obligation to investigate his claim in a timely fashion. But whether Dube reasonably investigated and whether a reasonable investigation would have revealed the alleged tortious acts is not apparent on the face of the complaint and gives rise to factual questions that would need to be explored in greater detail than contemplated under Rule 12(b)(6) before they are resolved.

¶13         Dube next argues that the trial court erred when it found that his allegation of tortious interference with a business expectancy failed to state a claim upon which relief can be granted. The University Officials, on the other hand, claim Dube failed to properly allege that they had tortiously interfered with Dube's alleged business expectancy or that he even had one. When reviewing a trial court's dismissal of a complaint for failure to state a claim, we must affirm the dismissal when the allegations of the complaint, which are assumed to be true, do not entitle the plaintiff to any relief. *See Savard v. Selby*, 19 Ariz. App. 514, 515, 508 P.2d 773, 774 (1973). "[B]ecause Arizona is a notice pleading state, a complaint need only have 'a statement of the ground upon which the court's jurisdiction depends, a statement of the claim showing that the pleader is entitled to relief[,] and a demand for judgment." *Rowland v. Kellogg Brown & Root, Inc.*, 210 Ariz. 530, ¶ 10, 115 P.3d 124, 127 (App. 2005), *quoting Morn v. City of Phoenix*, 152 Ariz. 164, 166, 730 P.2d 873, 875 (App. 1986); *see also* Ariz. R. Civ. P. 8(a), 16 A.R.S., Pt. 1.

**¶14** As stated above, a plaintiff asserting a claim of tortious interference with a business expectancy must allege (1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of termination of the business expectancy. *Miller*, 209 Ariz. 462, ¶ 32, 104 P.3d at 202. A claim for tortious interference with a business expectancy is insufficient unless the plaintiff alleges facts showing the expectancy constitutes more than a mere "hope." *Marmis v. Solot Co.*, 117 Ariz. 499, 502, 573 P.2d 899, 902 (App. 1977) (plaintiff's expectancy of purchase "amounted only to a hope" because conditioned upon absence of bidders and upon court approval). Finally, the intentional interference must be a "[w]rongful interference [that] rests on improper conduct by the defendant . . . not on whether a breach [or termination of the expectancy] followed." *Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 483, 763 P.2d 545, 547 (App. 1988); *see also Miller*, 209 Ariz. 462, ¶ 32, 104 P.3d at 202 ("The interference must be 'improper' before liability will attach."), *quoting id.*

**¶15** At oral argument in this court, Dube relied exclusively on an aiding and abetting theory of liability. "'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . does a tortious act in concert with the other or pursuant to a common design with him.'" *Estate of Hernandez by Hernandez-Wheeler v. Flavio*, 187 Ariz. 506, 511, 930 P.2d 1309, 1314 (1997), *quoting* Restatement (Second) of Torts § 876(a) (1979) (emphasis in *Flavio* omitted). And, the defendants must know that the act they are aiding is a tort and must substantially aid its commission. *Wells Fargo Bank*

8

*v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, ¶¶ 33-34, 38 P.3d 12, 23 (2002). Similarly, for there to be liability based on a civil conspiracy, two or more people must agree to accomplish a particular tortious act. *Id.* ¶ 99.

**¶16** In his complaint, Dube claims that while he was a student at the University from 1998 through 2004, the University Officials failed to share the findings of their investigation of Desai with him, misled him into believing that the investigation was ongoing, and ignored their obligations to conduct an adequate investigation. Dube further alleges that the University Officials' actions "were in bad faith in reckless disregard of the harm they knew or should have known that their actions would cause to Dube's reputation and his right to pursue an occupation." He also alleged that "[t]he intentional improper actions of [the University Officials] . . . trivializ[ed] Desai's actions and assist[ed] Desai in his acts of tortious interference," and that Likins's improper actions supported Desai. Dube states that the University Officials "allowed Desai to continue interfering with Dube's dissertation and career."

**¶17** Although Dube conclusorily asserts that the University Officials failed to take action they should have and in some way assisted Desai, he did not plead any factual allegations supporting his claim that the University Officials had knowingly assisted Desai in interfering with Dube's alleged business expectancy. Dube's actual factual allegations, that the officials failed to disclose the report and minimized Desai's alleged transgressions, do not demonstrate that the University Officials entered into a "common design" with Desai

9

to interfere with Dube's business expectancy, knowingly "substantially aided" Desai's intentional interference, or agreed to do so. In short, they lack the required nexus to Desai's alleged intentional tort.

¶18 Also at oral argument, Dube argued that the University Officials' failure to disclose the report of their investigation demonstrated their intent to interfere with his business expectancy, reasoning that had he possessed the report he could have presented it to potential employers. He relied on *Wells Fargo Bank*, in support of this argument. In *Wells Fargo Bank*, the court stated that if a "'transaction is atypical or lacks business justification, it may be possible to infer the knowledge necessary for aiding and abetting liability.'" *Id.* ¶ 51, *quoting Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975). The University Officials countered that they had no duty to disclose the report to Dube, and thus the transaction was not atypical and could not give rise to an inference. Dube's contention—that the University Officials failed to give him the report because they were aiding Desai's efforts to prevent Dube from obtaining a job—is neither supported by the facts alleged in his complaint nor a reasonable inference from those facts. Therefore, we do not find this argument persuasive.

¶19 Dube has also failed to allege that he had a valid business expectancy. Although the tort of tortious interference with a business expectancy covers situations that the tort of intentional interference with a contract does not, the former has only been available in those situations where the plaintiff can identify the specific relationship with which the defendant interfered. *See Stewart Title Guar. Co. v. Am. Abstract & Title Co.*,

10

215 S.W.3d 596, 603 (Ark. 2005) ("some precise business expectancy or contractual relationship must be obstructed" to state tortious interference claim); *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, ¶ 40 (Wash. 2006) (plaintiff claiming tortious interference with business expectancy must show "'a relationship between parties contemplating a contract'"), *quoting Scymanski v. Dufault*, 491 P.2d 1050, 1055 (Wash. 1971). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994); *see also Schuler v. Abbott Labs.*, 639 N.E.2d 144, 147 (Ill. App. Ct. 1993) ("Plaintiff states a cause of action only if he alleges a business expectancy with a specific third party."). "Although [the business relationship] need not be a contractual relationship, an existing relationship is required." *Roth v. Rhodes*, 30 Cal. Rptr. 2d 706, 715 (Cal. Ct. App. 1994). To state a claim for tortious interference upon which relief may be granted, "'there must be a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship.'" *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 148 P.3d 1179, 1217-18 (Haw. 2006), *quoting Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1357 (9th Cir. 1987) (emphasis in *Hawaii Med. Ass'n* omitted).

¶20    Even when the business expectancy is with a group, such as customers, and courts have allowed the plaintiff to allege a business expectancy with a class of individuals, they have required that the group be specifically identifiable. *See id.* at 1219-20

(interference with relationship with a company's "enrollees" or "patients" is sufficient); *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996) ("business relationship with identifiable customers" required for tort of tortious interference with business relationship); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (plaintiff must demonstrate "an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons").

¶21 We do not need to determine today the outer boundaries of the tort of tortious interference with a business expectancy because Dube has not alleged a valid claim under any of the formulations. We presume he would have worked for a single employer, not a class of employers. Therefore, the cases regarding classes of individuals are inapposite. Additionally, in his complaint he has not identified any specific employer with whom he sought employment and who was dissuaded from hiring him by acts for which the University Officials could be held responsible. Nor has he properly identified an employer of which the University Officials were aware.

¶22 Dube's only allegation is that he has been unable "to find employment even though he graduated with a 4.0 [grade point average]." This statement merely suggests that Dube had a "hope" of employment after graduation rather than an expectancy because he has not identified any prospective relationship. *See Marmis*, 117 Ariz. at 502, 573 P.2d at 902; *see also Trau-Med.*, 71 S.W.3d at 701. A claim for intentional interference with a business expectancy is not a substitute for a defamation claim. And even assuming Dube did have a business expectancy, he has not, as we stated above, alleged any facts supporting his

12

statement that the University Officials knew of, and intentionally interfered with, that expectancy.

¶23 Nevertheless, Dube relies heavily on *Antwerp Diamond Exchange of America v. Better Business Bureau of Maricopa County, Inc.*, 130 Ariz. 523, 637 P.2d 733 (1981), and *Edwards v. Anaconda Co.*, 115 Ariz. 313, 565 P.2d 190 (App. 1977), to support his proposition that "a [p]laintiff [only] needs to establish . . . the mere opportunity of obtaining a business relationship or economic advantage." But *Antwerp* and *Edwards* are factually distinguishable from this case. In *Antwerp*, the plaintiff was in the business of selling diamonds and precious stones to customers it generated through advertising and solicitation. 130 Ariz. at 525-26, 637 P.2d at 735-36. The supreme court did not focus on the requirement of a business relationship, but stated that "purchasers" might be dissuaded from doing business with the plaintiff. *Id*. at 530, 637 P.2d at 740. Here, Dube would work for a single employer and he had not even alleged an identifiable class of employers with whom he had a relationship with which the University Officials could have interfered. And in *Edwards*, the plaintiff there had begun negotiations with Conoco. 115 Ariz. at 314, 565 P.2d at 191. Dube has not alleged in his complaint that he had begun negotiations with any prospective employers, nor had he identified any employers that may have had an interest in hiring him.

¶24 Dube next argues that the trial court erred when it dismissed his complaint because he should have had the opportunity to amend it to cure any deficiencies. We review the denial of a motion to amend for an abuse of discretion. *MacCollum v. Perkinson*, 185

Ariz. 179, 185, 913 P.2d 1097, 1103 (App. 1996). Rule 15(a), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, provides that a party may amend its pleadings "once . . . at any time before a responsive pleading is served." After that, a party may amend its pleading "only by leave of court." *Id*. Leave to amend, although discretionary, should be liberally granted. *Owen v. Superior Court*, 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982). "Before the trial court grants a Rule 12(b)(6) motion to dismiss, the non-moving party should be given an opportunity to amend the complaint if such an amendment cures its defects." *Wigglesworth v. Mauldin*, 195 Ariz. 432, ¶ 26, 990 P.2d 26, 33 (App. 1999).

¶25 In his opposition to the University Officials' motion to dismiss, Dube argued he was entitled to amend his complaint to include the statement, "Plaintiff had the expectancy of finding a job in engineering and Defendants knew it." As noted earlier, the trial court dismissed Dube's claim of intentional interference because it was barred by the statute of limitations, and in doing so, the court implicitly denied Dube's request to amend his complaint. *See Modla v. Parker*, 17 Ariz. App. 54, 58, 495 P.2d 494, 498 (1972). Even though the court did not address Dube's request to amend his complaint, the proposed amendment does not cure the defects in the complaint as detailed above. Consequently, although generally a trial court should give a party the opportunity to amend its complaint prior to a Rule 12(b)(6) dismissal, the court was not required to do so here because the proposed amendment did not cure the complaint's defects. *See Wigglesworth*, 195 Ariz. 432, ¶ 26, 990 P.2d at 33.

14

¶26 Finally, Dube notes that Arizona is a notice pleading state and that he is only required to set forth a statement of the claim showing he is entitled to relief. *See Rowland*, 210 Ariz. 530, ¶ 10, 115 P.3d at 127. Although we agree with that general proposition, and discourage the granting of premature motions to dismiss, Dube has been given the opportunity here and below to state what other facts he could prove or potentially discover and he has still been unable to state a claim against the University Officials. Therefore, we see no reason to allow this particular claim to continue.

### Defamation

¶27 Dube alleges that Likins made defamatory statements about Dube in three letters. First, he alleges that Likins defamed him in a letter to Desai by stating that Desai "cover[ed] [Dube's] transgressions." Second, Dube alleges that Likins defamed him in another letter to Desai by stating that Dube's allegations were "unconfirmed." Finally, Dube alleges that Likins defamed him in a letter to a student of Desai's by referring to "Dube's indiscretion" and to "unhappy people," which Dube alleges was a reference to him.

¶28 Dube first argues the trial court erred when it found his defamation claims were barred by the statute of limitations. The University Officials counter that, because the statements were not "published in a manner in which it is peculiarly likely to be concealed from the plaintiff, such as in a confidential memorandum or a credit report," *Clark v. AiResearch Manufacturing Co. of Arizona*, 138 Ariz. 240, 242, 673 P.2d 984, 986 (App. 1983), the cause of action accrued when the statements were published and the statute of limitations bars Dube's defamation claims. We review de novo a trial court's dismissal of

15

a complaint based on its application of a statute of limitations. *Andrews ex rel. Woodard v. Eddie's Place, Inc.*, 199 Ariz. 240, ¶ 1, 16 P.3d 801, 801-02 (App. 2000).

¶29 The statute of limitations contained in A.R.S. § 12-821 applies to actions against a public entity or public employee. "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." § 12-821. And A.R.S. § 12-821.01 defines when such a cause of action accrues: "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." A.R.S. § 12-821.01(B).

¶30 The applicable statute of limitations in *Clark* was the general statute of limitations for defamation claims, *see* A.R.S. § 12-541(1), not § 12-821. *See Clark*, 138 Ariz. at 241, 673 P.2d at 985. Section 12-821.01(B), however, provides its own definition of accrual for claims against public entities or public employees. It does not provide that defamation actions accrue on the date of publication unless published in a manner peculiarly likely to be concealed from the plaintiff. Therefore, Dube was not required to meet that requirement for the definition of accrual in § 12-821.01(B) to apply.

¶31 Here, the complaint does not suggest that Dube had any reason to believe Likins would have made allegedly defamatory statements to third parties. Rather, it alleges that Likins defamed Dube in letters to Desai and a student of Desai's. According to the complaint, Desai was antagonistic to Dube and thus may have been unlikely to communicate Likins's letters to Dube. The complaint contains no information about the student, but does

16

not indicate that the student had any relationship with Dube. Dube alleges that he did not discover the existence of the letters until May 2005, while engaged in discovery in his lawsuit against Desai. Taken as true, the allegations in the complaint could support a finding that Dube filed his complaint within one year from the time he knew or should have known of the allegedly defamatory letters. Therefore, the claims are not barred by the statute of limitations.

¶32 At oral argument in this court, the University Officials contended for the first time that, even assuming the discovery rule applies here, Dube's action regarding the letter to the student, dated September 20, 2004, is still barred because Dube discovered it during the limitations period. They rely on the statement in *Clark* that the issue was "whether the statute of limitations is *tolled* prior to . . . discovery." 183 Ariz. at 242, 673 P.2d at 986 (emphasis added). From the use of the word "tolled," the University Officials arrive at the conclusion that, if discovery occurs during the limitations period, the action must also be brought within that period.

¶33 But the situation here is controlled by the statutes. Section 12-821 provides that a claim against a public entity or official must be filed within one year from the date the cause of action accrues. And § 12-821.01 states that such a cause of action accrues "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." Therefore, Dube had one year from when he discovered or should have discovered the defamation to file the action.

17

**¶34** Dube next argues the trial court erred when it dismissed his defamation claim, pursuant to Rule 12(b)(6), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, for failure to state a claim upon which relief can be granted. In reviewing such a dismissal, "we view the alleged facts as true." *Turley v. Ethington*, 213 Ariz. 640, ¶ 2, 146 P.3d 1282, 1284 (App. 2006). "The dismissal of a complaint is only appropriate when the 'plaintiff[] would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Id.* ¶ 6, *quoting Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, ¶ 4, 954 P.2d 580, 582 (1998).[2]

**¶35** "'One who publishes a false and defamatory communication concerning a private person . . . is subject to liability, if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them.'" *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306, 757 P.2d 105, 110 (App. 1988), *quoting* Restatement (Second) of Torts § 580(B) (1977) (alteration in *Rowland*; emphasis in *Rowland* omitted); *see also Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977).

---

[2]The trial court relied in part on copies of the letters in dismissing, but did not treat the motion to dismiss as a motion for summary judgment. Ordinarily, reliance on evidence extrinsic to the pleadings requires the court to treat the motion to dismiss as a motion for summary judgment. *See* Ariz. R. Civ. P. 12(b), 16 A.R.S., Pt. 1; *Smith v. CIGNA HealthPlan of Ariz.*, 203 Ariz. 173, ¶ 8, 52 P.3d 205, 208 (App. 2002); *Blanchard v. Show Low Planning & Zoning Comm'n*, 196 Ariz. 114, ¶ 11, 993 P.2d 1078, 1081 (App. 1999). But here the complaint quotes the allegedly defamatory portions of the letters and states who sent and received them. The letters "neither add to nor subtract from the deficiency of the pleading," *Brosie v. Stockton*, 105 Ariz. 574, 576, 468 P.2d 933, 935 (1970), and neither party argues the court erred in not treating the motion to dismiss as a motion for summary judgment. We thus review the trial court's judgment as a motion to dismiss pursuant to Rule 12(b)(6). *See Brosie*, 105 Ariz. at 576, 468 P.2d at 935.

¶36    As a threshold issue, we address whether the two letters to Desai were "published" for the purposes of a defamation claim.[3] *See Peagler*, 114 Ariz. at 315, 560 P.2d at 1222 (defamatory statement must be published); Restatement § 558. Publication for defamation purposes is communication to a third party. *See Morris v. Warner*, 160 Ariz. 55, 62, 770 P.2d 359, 366 (App. 1988); Restatement § 577.

¶37    Citing *Spratt v. Northern Automotive Corp.*, 958 F. Supp. 456 (D. Ariz. 1996), the University Officials contend Dube failed to state a claim as to the two letters to Desai because they were internal communications "regarding business related matters," and thus there was no publication. We are aware of no authority in the Arizona state courts that supports the University Officials' position. Although the federal district court in *Spratt* did seem to say that internal communications could not constitute publication, that case actually involved publication to the plaintiff, who then felt obligated to republish to a third party. *See id.* at 465. Thus, *Spratt* does not stand for an unqualified acceptance of a rule that a communication between two agents of the same principal does not constitute publication. And, in any event, federal decisions on state law issues do not bind us. *See MacCollum v. Perkinson*, 185 Ariz. 179, 184, 913 P.2d 1097, 1102 (App. 1996).

¶38    The issue of whether communication between two agents of the same principal constitutes publication has led to a split in authority. *See Wallulis v. Dymowski*, 918 P.2d

<hr>

[3]Although the University Officials raised this issue below, the trial court did not address it in its ruling. The University Officials raise the issue here, and we address it because we may affirm the trial court if it is correct for any reason. *See Espil Sheep Co. v. Black Bill & Doney Parks Water Users Ass'n*, 16 Ariz. App. 201, 203-04, 492 P.2d 450, 452-53 (1972).

755, 759 (Or. 1996). In some states, courts have held that this type of communication does not constitute publication for defamation purposes. *See, e.g., Dixon v. Econ. Co.*, 477 So. 2d 353, 354 (Ala. 1985); *Williams v. Cook*, 386 S.E.2d 665, 666 (Ga. Ct. App. 1989); *Cangelosi v. Schwegmann Bros. Giant Super Mkts.*, 390 So. 2d 196, 198 (La. 1980); *Lovelace v. Long John Silver's, Inc.*, 841 S.W.2d 682, 684 (Mo. Ct. App. 1992); *Magnolia Petroleum Co. v. Davidson*, 148 P.2d 468, 471 (Okla. 1944); *Woods v. Helmi*, 758 S.W.2d 219, 223 (Tenn. Ct. App. 1988); *Prins v. Holland-N. Am. Mortgage Co.*, 181 P. 680, 681 (Wash. 1919); *see also Flynn v. Reinke*, 225 N.W. 742, 744 (Wis. 1929) (describing telegraph company's intracorporate communications as "privileged"). This rule is based on the notion that there can be no publication where a corporation merely "communicat[es] with itself." *Prins*, 181 P. at 681.

¶39        On the other hand, courts in many states have held that such communications do constitute publication. *See, e.g., Wallulis*, 918 P.2d at 760 ("The legal fiction created by the intracorporate nonpublication rule is inconsistent with the purpose for which the common law recognizes defamation claims."); *see also Kelly v. Gen. Tel. Co.*, 186 Cal. Rptr. 184, 186 (App. 1982); *Torosyan v. Boehringer Ingelheim Pharms., Inc.*, 662 A.2d 89, 103 (Conn. 1995); *S. Bell Tel. & Tel. Co. v. Barnes*, 443 So. 2d 1085, 1086 (Fla. Dist. Ct. App. 1984); *Popko v. Cont'l Cas. Co.*, 823 N.E.2d 184, 191-92 (Ill. App. Ct. 2005); *Bals v. Verduzco*, 600 N.E.2d 1353, 1355-56 (Ind. 1992); *Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1294 (Kan. Ct. App. 1984); *Bander v. Metro. Life Ins. Co.*, 47 N.E.2d 595, 602 (Mass. 1943); *Bacon v. Mich. Cent. R. Co.*, 21 N.W. 324, 326 (Mich. 1884); *Frankson v.*

20

*Design Space Intern.*, 394 N.W.2d 140, 144 (Minn. 1986); *Simpson v. Mars Inc.*, 929 P.2d 966, 968 (Nev. 1997); *Hagebak v. Stone*, 61 P.3d 201, 208 (N.M. Ct. App. 2002); *Kennedy v. James Butler*, 156 N.E. 666, 667 (N.Y. 1927); *Rickbeil v. Grafton Deaconess Hosp.*, 23 N.W.2d 247, 256 (N.D. 1946).

¶40        A leading treatise on torts describes the latter view as the "contemporary view." 2 Dan B. Dobbs, *The Law of Torts* § 402, at 1126 (2001). Under that view, the communication constitutes publication, but a privilege prevents recovery where the statements are made in good faith. *See Hagebak*, 61 P.3d at 205. The former approach, however, "may cloud the concept of publication without directly addressing the real concerns of privilege." Dobbs, *supra*, at 1126.

> The difference in the two approaches is that if there is no publication, the plaintiff will have no claim even when the statement is defamatory, does harm, and is unnecessary to the conduct of corporate business. If the communication is a publication that is privileged when appropriate, the plaintiff will be allowed to recover when the privilege is exceeded or abused.

*Id.*

¶41        The Restatement has adopted the contemporary view, providing that the communication between two agents of the same principal is a publication, Restatement § 577 cmt. i, but also contemplating that a privilege can apply to intracorporate communication. *See* Restatement § 596 cmt. d. We generally follow the Restatement in the absence of controlling precedent, but "we will not do so blindly." *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, ¶ 26, 972 P.2d 658, 665 (App. 1998). Here, the Restatement's position protects the principal's interest in free communication while

21

providing for recovery in cases of abuse. *Cf. Burns v. Davis*, 196 Ariz. 155, ¶¶ 13, 15, 993 P.2d 1119, 1124-25 (App. 1999) (noting that qualified privilege balances competing policies of protecting reputation and free communication). Additionally, it is supported by decisions in what appears to be a majority of the jurisdictions that have addressed the issue. Accordingly, we adopt the rule that the communication between two agents of the same principal is a publication for defamation purposes subject to qualified privilege. The two letters from Likins to Desai thus were "published" for defamation purposes, even if they were written in the scope of University business.

**¶42** At oral argument in this court, the University Officials contended for the first time that we could affirm the trial court's ruling on the ground that the letters were conditionally privileged. But in light of the Arizona authority describing conditional privilege as a defense to a defamation action, *see Green Acres Trust v. London*, 141 Ariz. 609, 616, 688 P.2d 617, 624 (1984), it would be premature to address privilege on appeal in the context of a pre-answer motion to dismiss. We turn now to the trial court's reason for dismissing the claim: that the statements were not defamatory as a matter of law.

**¶43** "'To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation.'" *Turner v. Devlin*, 174 Ariz. 201, 203-04, 848 P.2d 286, 288-89 (1993), *quoting Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). Whether a statement is capable of defamatory meaning is a question of law

22

for the court, but whether the meaning conveyed was defamatory is a question for the jury. *Yetman v. English*, 168 Ariz. 71, 79, 811 P.2d 323, 331 (1991).

**¶44** The trial court here concluded that Likins's statements constituted his "opinion and personal belief" and thus were not capable of defamatory meaning. We review that decision de novo. *See id.* (whether statement capable of defamatory meaning question of law); *State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 213 Ariz. 419, ¶ 6, 142 P.3d 1232, 1234 (App. 2006) (court of appeals reviews questions of law de novo).

**¶45** The statements alleging Dube committed an "indiscretion" or "transgressions," coupled with the references in the letters to use of University equipment as being "contrary to [Desai's] specific instructions" and "unauthorized," could be construed as statements that Dube committed an act in violation of University policy or authorization. This could "'bring [Dube] into disrepute, contempt, or ridicule, or . . . impeach [his] honesty, integrity, virtue, or reputation.'" *Turner*, 174 Ariz. at 203-04, 848 P.2d at 288-89, *quoting Godbehere*, 162 Ariz. at 341, 783 P.2d at 787. Accordingly, we conclude these statements are capable of defamatory meaning. Although we recognize that, given Dube's allegations against Desai, Likins's statements to Desai may not have materially damaged Dube's reputation, the jury must decide whether defamatory meaning was actually conveyed. *See Yetman*, 168 Ariz. at 79, 811 P.2d at 331.

**¶46** The University Officials argue, however, that these statements constituted Likins's opinion that "Dube had failed to follow directions" and thus are not provable as

23

false.[4] But Likins's statements regarding Dube's "indiscretion" or "transgressions" were not cast as his subjective belief, nor would there necessarily be blanket protection from defamation liability if they had been. *See Turner*, 174 Ariz. at 204, 848 P.2d at 289. And statements that Dube committed an "indiscretion" or "transgressions" in a way that was "unauthorized" or "contrary to [Desai's] specific instructions" at least imply facts upon which the opinion are based. *See id.* at 208, 848 P.2d at 293 ("[S]tatements of opinion are actionable when they 'imply a false assertion of fact.'"), *quoting Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19, 110 S. Ct. 2695, 2706 (1990); Restatement § 566 (same). Whether Dube in fact committed an indiscretion or transgression could be proved false. Thus, to the extent it is a statement of opinion, it is actionable as defamatory.

¶47        For the first time at oral argument, the University Officials contended Likins's statements regarding Dube's "transgressions" or "indiscretion" are not actionable because Likins was merely summarizing or repeating prior statements of the persons to whom he was writing. The University Officials contended, citing no authority, that repeating something back to the person who first said it is not defamation. But, even if the University Officials are correct as a legal matter, the limited record before us does not include the letters to which Likins was responding. We thus have no way of knowing whether Likins was in fact

---

[4]Neither party has contended, at this stage of the litigation, that Dube is a public figure, that Likins's statements involved a matter of public concern, or that a privilege applies. But, in view of our disposition of this issue, we need not decide whether a private figure must show that allegedly defamatory statements not involving matters of public concern are provable as false. It is not clear whether this requirement applies to statements "not involving public issues (or mere invective or hyperbole)." 2 Dan B. Dobbs, *The Law of Torts* § 420, at 1186 (2001 & Supp. 2006).

24

repeating or summarizing the others' statements, or whether he did so accurately. Accordingly, this argument provides no basis for affirming a Rule 12(b)(6) dismissal of the defamation claims.

**¶48** We resolve differently the question of whether the other statements are capable of defamatory meaning. The "unconfirmed" nature of Dube's allegations, even if a false statement, is not defamatory as defined in *Turner*. At most, the term "unconfirmed" suggests that the veracity of Dube's allegations was not yet determined, not that the allegations were false or baseless. This is not the type of suggestion that would bring someone into "'disrepute, contempt, or ridicule, or . . . impeach [his] honesty, integrity, virtue, or reputation.'" *Turner*, 174 Ariz. at 204, 848 P.2d at 289, *quoting Godbehere*, 162 Ariz. at 341, 783 P.2d at 787.

**¶49** Also, in referring to Dube's allegations and in his letter's next paragraph referring to "unhappy people," Likins did not specifically refer to Dube. To the extent the statement can be interpreted as such a reference, this is not the type of statement that is "capable of being reasonably interpreted as stating actual facts about [Dube]." *Turner*, 174 Ariz. at 207, 848 P.2d at 292. In *Turner*, the allegedly defamatory material included an allegation that the plaintiff police officer's "manner [of interrogation] bordered on police brutality." *Id.* at 209, 848 P.2d at 294. The court held that this statement was not actionable, noting that the statement referred not to "conduct but rather . . . [to] demeanor." *Id.* at 208, 848 P.2d at 293. Similarly, Likins's reference to "unhappy people," to the extent that it can be construed to refer to Dube, does not refer to or imply any factual assertion;

25

instead, it is the type of "'rhetorical hyperbole,'" *id.* at 207-08, 848 P.2d at 292-93, *quoting Old Dominion Branch No. 496, National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 285, 94 S. Ct. 2770, 2782 (1974), that does not "impl[y] the allegation of undisclosed defamatory facts as the basis for the opinion." Restatement § 566.[5] Accordingly, the statement is not actionable as a matter of law.

¶50 The University Officials argue that Likins cannot be liable for any republication by Desai of the allegedly defamatory letters. This issue, which the trial court did not address in its ruling, is moot as to the letter mentioning Dube's "unconfirmed allegations" because we have determined that statement is not capable of defamatory meaning and thus not actionable. And as to the other letter, referring to Dube's "transgressions," at most Desai's republication would present a damages issue. *See* Restatement § 576 cmt. a (rule regarding harm caused by reasonably expected repetition "applicable . . . when . . . the defamation is actionable per se . . . and damages for the special harm for the repetition are sought in addition to general damages"). Accordingly, this issue is premature and we do not address it here.

¶51 In another argument made for the first time at oral argument, the University Officials claimed that Dube failed to allege the requisite level of fault required for

---

[5]The requirement that rhetoric or epithet cannot be actionable unless it implies a factual assertion, unlike the requirement that a statement be provable as false, appears to apply even to cases in which the matter is not one of public concern. *See* Restatement § 566 (not limiting opinion rule to cases involving matters of public concern); 2 Dan B. Dobbs, *The Law of Torts* § 420, at 1186 (2001) ("So far as it is a common law rule, it appears to cover all cases.").

defamation liability. To state a claim for defamation where, as here, there has not yet been any allegation that the plaintiff is a public figure, that the matter is one of public concern, or that a privilege applies, the plaintiff must show fault at least amounting to negligence. *See Peagler*, 114 Ariz. at 315, 560 P.2d at 1222. Dube's complaint alleges fault sufficiently to state a claim under Arizona's liberal notice pleading rules. *See Rowland v. Kellogg Brown & Root, Inc.*, 210 Ariz. 530, ¶ 10, 115 P.3d 124, 127 (App. 2005).

¶52 Dube alleged in his complaint that one of "Desai's violations" was "using University facilities for his own personal gain," for which Dube alleged Likins falsely blamed him. Dube further alleged that a University audit confirmed his grievances against Desai. The complaint states that "Likins knew Desai's actions were illegal or at least ignored [his] obligation to conduct an adequate investigation." Finally, the complaint states that Likins's statements were false and defamatory. This is a sufficient allegation of fault to survive a motion to dismiss under Rule 12(b)(6).

¶53 Dube lastly argues the trial court should have permitted him "to cure any deficiency in the wording of the [a]mended [c]omplaint." But Dube did not request the opportunity to amend his complaint with regard to his defamation claims. Thus, that argument, as far as it relates to his defamation claims, is waived. *See Allstate Indem. Co. v. Ridgely*, 214 Ariz. 440, ¶ 7, 153 P.3d 1069, 1071 (App. 2007) (arguments not raised in trial court waived on appeal).

**Disposition**

¶54        For the foregoing reasons, we affirm the trial court's dismissal of Dube's claim of tortious interference with business expectancy against the University Officials and thus affirm the dismissal of Powell and Hixon from this action.  We also affirm the trial court's dismissal of Dube's claims that Likins's references to "unhappy people" and "unconfirmed allegations" were defamatory.  Accordingly, the trial court's dismissal of any defamation claims arising from Likins's February 20, 2004 letter is affirmed.  But we reverse the trial court's dismissal of Dube's defamation claim based on Likins's references to Dube's "indiscretion" and "transgressions" in the other two letters Likins authored.  We remand for further proceedings consistent with this decision.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

_____
GARYE L. VÁSQUEZ, Judge

28