NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GALACTIC VENTURES, LLC, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

MICHAEL MONSALVE, et al., *Defendants/Appellees/Cross-Appellants*.

No. 1 CA-CV 25-0335
FILED 6-25-2026

Appeal from the Superior Court in Maricopa County
No. CV2022-015325
The Honorable John L. Blanchard, Judge

**VACATED AND REMANDED**

COUNSEL

Simbro & Stanley, PLC, Phoenix
By Edwin B. Stanley
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Dempsey Law PLLC, Phoenix
By Casey C. Dempsey
*Counsel for Defendants/Appellees/Cross-Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the court, in which Judge Anni Hill Foster and Chief Judge Randall M. Howe joined.

---

**G A S S**, Judge:

¶1          Galactic Ventures, LLC, an Arizona company, appeals the superior court's summary judgment for Michael Monsalve and Monsalve Motorsports, LLC, a California company, on Galactic's claims for intentional interference with contract and intentional interference with business expectancy. In turn, Michael Monsalve and Monsalve Motorsports, LLC cross-appeal the superior court's denial of their request for an award of attorney fees.

¶2          The court vacates the superior court's summary judgment on Galactic's claims and remands for further proceedings. This decision moots Monsalve's cross-appeal.

## FACTUAL AND PROCEDURAL HISTORY

I.      **The appeal concerns the ownership and related claims for a classic collectible vehicle, a 1958 Ferrari GT LWB Berlinetta.**

¶3          Various individuals and companies have alleged competing ownership of the Ferrari. For clarity, this memorandum decision uses the following collective names when discussing the various individuals and companies:

- **Monsalve**: Michael Monsalve is the sole owner of Monsalve Motorsports, LLC. Wil Silva allegedly signed some documents on behalf of Monsalve Motorsports, LLC. This memorandum decision refers to Monsalve, Monsalve Motorsports, and Wil Silva collectively as Monsalve.

- **Galactic:** Galactic Ventures, LLC is the successor-in-interest to David Hurowitz. This memorandum decision refers to Galactic even when discussing the acts of its predecessor-in-interest.

- **Original Owner**: Eric Edenholm owned the Ferrari and engaged with both Galactic and Monsalve regarding its ownership. When

2

Edenholm proposed selling the Ferrari to Galactic, the purchase agreement listed Zoey Air, L.L.C., an entity owned and controlled by Edenholm, as the owner. This memorandum decision refers to Edenholm and Zoey Air L.L.C. collectively as Original Owner.

- **Potential Buyer:** Steve Berkowitz entered an agreement to buy the Ferrari from Galactic, but cancelled that agreement.

## II. The parties' versions of the relevant events differ significantly.

### A. Monsalve's Factual Allegations: Monsalve claims it owned the Ferrari and never authorized its sale to Galactic.

¶4 Monsalve says it bought the Ferrari from the Original Owner for $1,000,000 in March 2016 and titled it in Monsalve's name in California in December 2017. Monsalve then stored the Ferrari in California, had sole control over it, and drove it whenever Monsalve wanted. The agreement allowed the Original Owner to buy the Ferrari back at any time for $1,000,000 plus any unpaid interest. With Monsalve's permission, the Original Owner would remove the Ferrari to show it to potential purchasers so he could exercise his buy-back option.

¶5 Monsalve says it allowed the Original Owner to take the Ferrari to Arizona in August 2019 to show it to others who were interested in buying it. As of January 2020, the Original Owner had not returned the Ferrari and ceased all payments to and contact with Monsalve. Two months later, Monsalve learned the Original Owner sold or collateralized the Ferrari to a third party without Monsalve's permission or authority. Monsalve filed a report with a California police department, which entered the Ferrari into a database of stolen vehicles.

¶6 Monsalve says it later learned the Original Owner transferred physical possession of the Ferrari to Galactic, but says the Original Owner never agreed to transfer title—or permanent possession of—the Ferrari to Galactic. In August 2020, Monsalve sued the Original Owner in California for conversion and fraud related to the Ferrari. The complaint alleged the Original Owner sold the Ferrari to a third party using a duplicate title and did not pay the sale proceeds to Monsalve as agreed.

¶7 Monsalve says it did not know until August 2021 about Galactic's claimed ownership of the Ferrari. Monsalve had reported the Ferrari stolen. When Galactic learned about Monsalve's report, Galactic told Monsalve it could lose a potential sale if Monsalve reported the Ferrari stolen. The next month—September 2021—Galactic's Potential Buyer

cancelled the contract to buy the Ferrari from Galactic. Monsalve says it never spoke to the Potential Buyer.

### B. Galactic's Factual Allegations: Monsalve never owned the Ferrari and intentionally interfered with Galactic's contract to sell the Ferrari to the Potential Buyer and with Galactic's related business expectancy.

¶8 Galactic says Monsalve did not buy the Ferrari. Rather, Monsalve lent the Original Owner $1,000,000 and the Ferrari merely was collateral for the loan. Monsalve and the Original Owner did not execute a bill of sale or a promissory note for the transaction, and Monsalve never possessed the Ferrari. Instead, the Original Owner stored the Ferrari in a warehouse the Original Owner leased, and Monsalve did not drive it.

¶9 Galactic says the Original Owner stopped making payments on the loan after about 1 year, and the Original Owner told Monsalve he would sell the Ferrari and use the proceeds to repay the loan. The Original Owner removed the Ferrari from his warehouse twice: once in 2017 and again in 2019, telling Monsalve he was showing it to others who were interested in buying it. Galactic purchased the Ferrari from the Original Owner in August 2017 and retitled it in Arizona. Until August 2019, Galactic allowed the Original Owner to retain physical possession of the Ferrari, at which point it took physical possession of it.

¶10 Galactic says when Monsalve contacted the California police department about the Ferrari, Monsalve told the police his transaction with the Original Owner was a loan, not a purchase. At that time, the California police department noted that Galactic registered the Ferrari in Arizona in July 2018.

¶11 In August 2021, Galactic says it told Monsalve it was under contract to sell the Ferrari and by including the Ferrari in the stolen vehicle database, Monsalve was jeopardizing the sale. Monsalve refused to remove the Ferrari from the stolen vehicle database. When Galactic contacted the California police department about the database, it learned that Monsalve had titled the Ferrari in California in 2017. When Galactic informed its Potential Buyer about the California title, he chose to cancel the purchase.

¶12 Galactic says Monsalve obtained the California title for the Ferrari using forged documents and making misrepresentations to the California Department of Motor Vehicles. Galactic relies on the following deposition testimony to support its allegations:

- Wil Silva, whose name appears on Monsalve's California title application, said he did not sign that document, did not authorize anybody to sign it on his behalf, and had not seen it before his testimony.

- The Original Owner did not sign the Arizona Certificate of Title submitted with Monsalve's title application to the California Department of Motor Vehicles, the signature was not from his only employee, he never authorized anyone to sign that document on his behalf, and he did not know who signed it.

- Monsalve said he did not receive a bill of sale for the Ferrari from the Original Owner and denied any knowledge of the bill of sale attached to the California Department of Motor Vehicles title application.

**III.    Galactic sued Monsalve for intentional interference with contract and intentional interference with business expectancy, saying Monsalve's actions caused the Potential Buyer to cancel the purchase and prevented Galactic from selling it.**

¶13        Monsalve moved for summary judgment, arguing Galactic produced no evidence Monsalve intentionally interfered with Galactic's contracts or business expectations. To support its motion, Monsalve claimed it was unaware Galactic had entered a contract to sell the Ferrari, that Galactic's attempts to secure Monsalve's legal interest in the Ferrari were not improper, and Monsalve's communications regarding the Ferrari were privileged and could not support Galactic's claims.

¶14        Galactic responded, pointing to factual disputes about whether Monsalve bought the Ferrari, forged documents to acquire the title to the Ferrari, and interfered with Galactic's ability to sell the Ferrari by continuing to assert ownership under a title acquired with forged documents. Galactic argued those factual disputes were material and precluded summary judgment.

¶15        The superior court granted Monsalve's motion, ruling Monsalve's actions to protect and pursue Monsalve's rights in the Ferrari were privileged and not improper. The superior court found Galactic had not presented "credible admissible evidence" showing Monsalve knew about Galactic's contract to sell the Ferrari or Monsalve's actions caused the Potential Buyer to terminate his agreement with Galactic.

¶16   Monsalve applied for attorney fees, citing Arizona Revised Statutes A.R.S. §§ 12-341.01 and -349. The superior court denied the application, finding Galactic's claims did not arise out of contract as required by § 12-341.01 and an award was not appropriate under § 12-349 because Galactic's claims were "fairly debatable."

¶17   The court has jurisdiction over Galactic's timely appeal and Monsalve's timely cross-appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, and -2101.A.

## DISCUSSION

¶18   Galactic argues the superior court should not have granted summary judgment for Monsalve. Monsalve argues the superior court should have granted its request for attorney fees.

I.  **Monsalve was not entitled to summary judgment on Galactic's claims for intentional interference with the contract and intentional interference with business expectancy.**

   A.  **Galactic established disputed issues of material fact as to each element of its intentional interference with contract claim.**

¶19   The court reviews a grant of summary judgment *de novo* and views the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58 ¶ 9 (2022).

¶20   The superior court may grant summary judgment if the moving party establishes "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). "A 'genuine' issue is one that a reasonable trier of fact could decide in favor of the party adverse to summary judgment on the available evidentiary record." *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 520 ¶ 15 (App. 2009) (citation omitted). The governing substantive law is used to identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

¶21   To succeed on a claim for intentional and tortious interference with the contract, a party must prove (1) the existence of a valid contractual

relationship, (2) the interferer's knowledge of the relationship, (3) intentional interference inducing or causing a breach, (4) damage to the party whose relationship was disrupted, and (5) the defendant acted improperly. *Snow v. W. Sav. & Loan Ass'n*, 152 Ariz. 27, 33 (1986).

¶22        Galactic argues the superior court erred because it proffered evidence to support each of the 5 elements. Monsalve concedes Galactic offered sufficient evidence to survive summary judgment as to elements 1 and 4, but argues Galactic failed to establish a material issue of fact as to elements 2, 3, and 5.

¶23        The court addresses a threshold matter about the evidence before the superior court. Monsalve's reply to the motion for summary judgment raised evidentiary objections. Monsalve preserved those issues before the superior court, but the superior court implicitly overruled Monsalve's objections because it did not rule any evidence was inadmissible. *See Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, 211 ¶ 16 (App. 2018). Monsalve waived any challenge to that implied denial because it did not raise the issue in its cross-appeal. *Id.*

### 1.    Galactic established an issue of material fact on element 2—Monsalve's knowledge of the Berkowitz contract.

¶24        Monsalve denies having any knowledge of Galactic's contract with the Potential Buyer. But Galactic's evidence showed Galactic told Monsalve about a potential sale of the Ferrari under the Potential Buyer contract from August 13, 2021. Galactic's evidence also shows it told Monsalve's counsel it was under contract to sell the Ferrari (referring to the Potential Buyer contract) on August 20, 2021.

¶25        Those 2 pieces of evidence are material to the second element, which the jury could resolve in Galactic's favor. *See Modular Mining Sys.*, 221 Ariz. at 520 ¶ 15.

### 2.    Galactic established an issue of material fact on element 3—Monsalve's alleged intentional interference.

¶26        Intentional interference means Monsalve must have intended to interfere with the Potential Buyer contract or "known that this result was substantially certain to be produced by [Monsalve's] conduct." *Snow*, 152 Ariz. at 33. And "liability attaches to interferences that are 'incidental to the

actor's independent purpose and desire but known to him to be a necessary consequence of his action.'" *Id.* at 34 (quoting Restatement (Second) of Torts § 766 cmt. j (A.L.I. 1979)). Generally, the finder of fact determines the question of intent. *Id.* at 33–34.

¶27 The superior court based its ruling on Monsalve's stolen vehicle report and Monsalve's litigation against the Original Owner. But Galactic produced evidence showing Monsalve's title to the Ferrari was defective and improperly recorded in California. Galactic also produced evidence that Monsalve refused to withdraw that title even after Galactic told Monsalve the Ferrari was under contract to sell. That evidence presents 2 issues of material fact under element 3: (1) a jury could infer Monsalve should have known Galactic's buyer would not complete the purchase with Monsalve's competing title in place; and (2) Monsalve's decision to maintain its title was intended to thwart the sale. *Id.*

¶28 Monsalve argues the California title could not support a claim of interference with the Potential Buyer contract because Monsalve recorded it in 2017, years before the Potential Buyer contract existed. But Galactic contends it was not just Monsalve's wrongful recording of the California title, but also Monsalve's subsequent refusal to remove it and continued reliance on the California title which caused the Potential Buyer to cancel his contract with Galactic. A jury must weigh the competing evidence and inferences to decide whether Monsalve acted intentionally to interfere with the Potential Buyer contract. *Id.* at 34.

¶29 Monsalve also argues a jury could not find Monsalve interfered with the Potential Buyer contract because Galactic, not Monsalve, told the Potential Buyer that Monsalve had filed the competing California title. But undisputed evidence in the Potential Buyer contract shows Galactic warranted it owned the Ferrari and could convey the Ferrari without any encumbrances. Once Galactic knew Monsalve had recorded and refused to remove the competing California title, Galactic was contractually obligated to tell the Potential Buyer. *See* A.R.S. § 47-2312 (addressing when a contract for sale contains a warranty of good title); Restatement (Second) of Torts § 551 (A.L.I. 1977) (recognizing liability for non-disclosure of material facts in a business transaction); Restatement (Second) of Contracts § 161 (A.L.I. 1981) (recognizing certain circumstances when the non-disclosure of a fact may amount to a misrepresentation).

¶30 Monsalve also argues he could not have interfered with the Potential Buyer contract because Potential Buyer had broad rights to terminate it. Not so. A plaintiff may establish a claim for intentional

interference with a contract even if the contract is terminable at will. *See* Restatement (Second) of Contracts § 766 cmt. g (A.L.I. 1979) (recognizing a defendant may not improperly interfere with a contract even if the contract is terminable at will). The issue is not the contract terms allowing Potential Buyer to cancel. The issue is the Potential Buyer's reason for cancelling.

### 3.    Galactic established an issue of material fact on element 5—whether Monsalve acted improperly.

**¶31**        "To be liable for tortious interference with a contract, the defendant's actions must be improper as to motive or means." *ABCDW LLC v. Banning*, 241 Ariz. 427, 437 ¶ 42 (App. 2016). Seven factors come into play when determining whether a particular action was improper:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 387 (1985) (quoting Restatement (Second) of Torts § 767 (A.L.I. 1979)). And the determination generally requires weighing "the social importance of the interest the defendant seeks to advance against the interest invaded." *Banning*, 241 Ariz. at 437 ¶ 42 (citation omitted). "To be improper, an interference must be wrongful by some measure beyond the fact of the interference itself." *Snow*, 152 Ariz. at 34 (internal quotations omitted).

**¶32**        Monsalve argues his actions were privileged because he was acting to protect his legal interest in the Ferrari when he told the police it had been stolen and discussed his pending legal action against the Original Owner with third parties. But those actions are not what Galactic relies on to show Monsalve's improper interference. Galactic argues Monsalve improperly interfered when it wrongfully recorded the California title, refused to remove the title, and continued reliance on the false title to the Ferrari in 2021, all of which caused the Potential Buyer to cancel his contact with Galactic.

**¶33**        Even so, Monsalve is not without a defense. Monsalve was entitled to act in good faith to protect his own legal interest in the Ferrari, even if it caused the Potential Buyer to cancel his purchase contract with Galactic. *Snow*, 152 Ariz. at 34–35; Restatement (Second) of Torts § 773

(A.L.I. 1979). To establish such a defense, Monsalve would need to show (1) he had or honestly believed he had a legally protected interest; (2) he asserted the interest or threatened to protect it in good faith; and (3) he threatened to protect it by proper means. *Snow*, 152 Ariz. at 34–35. In support, Monsalve says he believed he owned the Ferrari because it was a condition of Monsalve's $1,000,000 loan to the Original Owner.

¶34        But Monsalve's argument is subject to controverting evidence. Galactic offered evidence showing Monsalve's transaction with the Original Owner was a loan, not a purchase, for which the Ferrari was collateral. Galactic further argues Monsalve acted improperly by forging documents and falsely recording a title to the Ferrari in California when he had no ownership interest in it. With the controverting evidence and inferences, a jury must determine whether Monsalve acted, subjectively, in good faith, and to defend what it honestly believed was its legally protected interest when it filed the California title and refused to release it after Monsalve learned of the Potential Buyer contract. *See id.* at 34-35.

### B.        Galactic established a material issue of fact supporting its intentional interference with business expectancy claim.

¶35        For the same reasons the court vacates the superior court's summary judgment for Monsalve on Galactic's intentional interference with contract claim, it vacates on the intentional interference with business expectancy. The elements of both claims are nearly identical, except Galactic need not prove a valid contract was in place. *Dube v. Likins*, 216 Ariz. 406, 412–14 ¶¶ 14, 19 (2007) (recognizing business expectancy must be with a specific third party or specifically identifiable group, such as customers); Restatement (Second) of Torts § 766B (A.L.I. 1979). Instead, it need only prove an existing relationship having the potential to develop into a contractual relationship. *Dube*, 216 Ariz. at 414 ¶ 19.

¶36        Galactic presented evidence showing Monsalve's alleged wrongful title prevented it from selling the Ferrari in the normal course of business and the eventual sale at auction yielded a significantly lower price than the Potential Buyer had agreed to pay. At the very least, the Potential Buyer contract provides evidence of Galactic's expectation it could sell the Ferrari for a substantially higher price to the Potential Buyer, if not others. *See id.* at 413–14 ¶¶ 19–20.

## II.    Monsalve's cross-appeal for attorney fees and costs is moot.

¶37        Monsalve challenges the superior court's denial of the request for attorney fees. The decision to vacate summary judgment moots that

denial. The superior court may consider whether either side may recover attorney fees based on the final resolution of the case.

## ATTORNEY FEES AND COSTS

**¶38**        On appeal, Galactic seeks an award for costs under A.R.S. § 12-341. Monsalve seeks an award for attorney fees and costs under A.R.S. §§ 12-341, -341.01, and -349. The court exercises its discretion to deny Monsalve's request for an award for attorney fees and costs on appeal. Any award must abide the outcome on remand. Because Galactic is the prevailing party in this appeal, the court awards Galactic its costs on appeal upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

**¶39**        The court vacates the superior court's summary judgment for Monsalve and remands for further proceedings consistent with this decision.

