246 P.3d 938

**ELM RETIREMENT CENTER, LP,**
an Arizona limited partnership,
Plaintiff/Appellant,

v.

Joann **CALLAWAY** and Joseph Callaway,
wife and husband; Rocco and Ersilia
Sablone, husband and wife, Defen-
dants/Appellees.

Nos. 1 CA–CV 09–0631, 1 CA–CV 09–0696.

Court of Appeals of Arizona,
Division 1, Department B.

Nov. 2, 2010.

Mann Law Firm, P.C. By Robert N. Mann, Emily H. Mann, Scottsdale, Attorneys for Appellant.

Thomas, Thomas & Markson P.C. By Neal B. Thomas, Phoenix, Attorneys for Callaway Appellees.

Dessaules Law Group By Jonathan A. Dessaules, Phoenix, Attorneys for Sablone Appellees.

## OPINION

JOHNSEN, Judge.

¶ 1 A homebuyer appeals the dismissal of its claim for breach of contract based on a provision that imposes on the buyer the obligation to verify any representation about square footage if it considers the size of the property to be material. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The buyer is Elm Retirement Center, LP, which contracted to buy a Scottsdale home in July in July 2005. Elm alleges that in entering into the contract, it relied on an advertisement stating the home has 3,792 square feet of living space. The purchase agreement does not specify the size of the home, but in boldface type it provides, "BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A MATERIAL MATTER TO THE BUYER, IT MUST BE VERIFIED DURING THE INSPECTION PERIOD." Elm's complaint alleges the home contains only 3,605 square feet and that the difference from the advertised square footage is material.

¶ 3 Elm filed suit in April 2009 against the sellers and the sellers' brokers, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, fraud in the inducement, negligence and negligence *per se*. The superior court granted the defendants' motions to dismiss on the grounds that the tort claims are barred by the economic loss doctrine and the contract claims fail under the language recited above.

¶ 4 Elm timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

### A. Standard of Review.

¶ 5 "We review an order granting a motion to dismiss for abuse of discretion." *Dressler v. Morrison*, 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978, 980 (2006). "[W]e assume the truth of the allegations set forth in the complaint and uphold dismissal only if the plaintiff[ ] would not be entitled to relief under any facts susceptible of proof in the statement of the claim." *Mohave Disposal Inc. v. City of Kingman*, 186 Ariz. 343, 346, 922 P.2d 308, 311 (1996).

### B. The Court Was Not Required to Convert the Motion to Dismiss to a Motion for Summary Judgment.

¶ 6 In relevant part, Arizona Rule of Civil Procedure 12(b) provides, "If, on a motion asserting [failure to state a claim upon which relief can be granted], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." The sellers attached a copy of the purchase contract to their motion to dismiss. Elm argues that because the superior court considered the contract in ruling on the motion to dismiss, the court erred by failing to treat the motion as a motion for summary judgment pursuant to Rule 12(b).

¶ 7 Contrary to Elm's contention, even if a document is not attached to the complaint, if it is central to the claim, the court may consider it without converting a motion to dismiss to a motion for summary judgment. *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 64, ¶ 14, 226 P.3d 1046, 1050 (App.2010) (motion to dismiss that attached copy of lien on which complaint was based).

¶ 8 Because the purchase contract is central to Elm's claims, the superior court did not abuse its discretion by considering the contract in ruling on the motion to dismiss without treating the motion as a motion for summary judgment.

## C. The Tort Claims in the Complaint Are Barred by Limitations.

¶ 9 The superior court dismissed the tort claims in the complaint based on the economic loss doctrine. Without addressing the economic loss doctrine, we affirm the dismissal of the tort claims because they are barred by limitations. *See State v. Burnley*, 114 Ariz. 300, 302, 560 P.2d 818, 820 (App. 1977) ("On appeal the ruling of the trial court will be affirmed on any grounds which were within the issues, where the correct legal result was reached.").

¶ 10 The tort claims in the complaint are subject to two- or three-year limitations periods. *See* A.R.S. § 12–542(3) (2003) (negligence; two years); A.R.S. § 12–543(3) (2003) (fraud; three years). Elm filed the complaint nearly four years after the transaction, well beyond the applicable limitations periods.

¶ 11 Elm argues the tort claims should not have been dismissed, however, because its complaint alleges it "discovered Defendants' misrepresentations within the timeframe as set forth by applicable law." The discovery rule tolls limitations "until the plaintiff possesses a minimum knowledge sufficient to recognize that a 'wrong occurred and caused injury.' " *Ritchie v. Krasner*, 221 Ariz. 288, 304, ¶ 57, 211 P.3d 1272, 1288 (App.2009) (citing *Walk v. Ring*, 202 Ariz. 310, 316, ¶ 22, 44 P.3d 990, 996 (2002)).

¶ 12 The discovery rule, however, does not permit a party to hide behind its ignorance when reasonable investigation would have alerted it to the claim. *See Doe v. Roe*, 191 Ariz. 313, 324, ¶ 37, 955 P.2d 951, 962 (1998) (plaintiffs have affirmative duty of due diligence to investigate potential claims). Instead, a tort claim accrues when a plaintiff knows or "with reasonable diligence should know" of the defendant's wrongful conduct. *Id.* at 322, ¶ 29, 955 P.2d at 960. Consequently, most cases applying the discovery rule share a "common thread": "The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 182 Ariz. 586, 589, 898 P.2d 964, 967 (1995).

¶ 13 Elm's complaint does not allege facts establishing that after Elm purchased the home, it exercised reasonable diligence in discovering the true square footage, nor does the complaint offer an adequate explanation for Elm's failure to do so. The complaint's conclusory assertion that Elm discovered the claims "within the timeframe as set forth by applicable law" is insufficient as a matter of law to satisfy the discovery rule. *See Cullen v. Auto–Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008) ("complaint that states only legal conclusions, without any supporting factual allegations, does not satisfy Arizona's notice pleading standard"); *Dube v. Likins*, 216 Ariz. 406, 424, ¶ 14, 167 P.3d 93, 111 (App.2007) (supplemental opinion).

## D. The Court Correctly Dismissed the Contract Claims.

¶ 14 The contract provides, "Seller warrants that Seller has disclosed to Buyer ... any information concerning the Premises known to Seller ... which materially and adversely affect[s] the consideration to be paid by Buyer." Elm argues its complaint states a claim for relief by alleging the sellers breached a warranty under that provision when they "identified the Residence's square footage as 3,792 square feet in writing." The superior court dismissed Elm's breach of contract claims based on the provision, recited *supra* ¶ 2, by which Elm acknowledges that "ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES ... IS APPROXIMATE" and that "IF SQUARE FOOTAGE IS A MATERIAL MATTER TO THE BUYER IT MUST BE VERIFIED DURING THE INSPECTION PERIOD."

¶ 15 We review issues of contract interpretation *de novo*. *Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, 634, ¶ 5, 2 P.3d 1276, 1279 (App.2000). Our purpose in interpreting a contract is to ascertain and enforce the parties' intent. *U S West Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 185 Ariz. 277, 280, 915 P.2d 1232, 1235 (App.1996). To determine the parties' intent, we "look to the plain meaning of the words as viewed in the context of the con-

tract as a whole." *United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 259, 681 P.2d 390, 411 (App.1983). When the terms of a contract are plain and unambiguous, its interpretation is a question of law for the court. *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 175 Ariz. 273, 277, 855 P.2d 787, 791 (App.1993). If the contract language is reasonably susceptible to more than one meaning, extrinsic evidence may be admitted to interpret the contract. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158–59, 854 P.2d 1134, 1144–45 (1993).

¶ 16 Elm first argues the superior court erred by treating the verification provision as a disclaimer of liability for breach of warranty as to the square footage of the property. Elm offers no authority, however, for its assertion that the law will not enforce a provision by which parties to a contract agree to limit their respective liabilities or remedies under the contract. *Cf. Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 374, 694 P.2d 198, 204 (1984) (upholding warranty disclaimer in commercial sales case), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 111 P.3d 1003 (2005); *S Dev. Co. v. Pima Capital Mgmt. Co.*, 201 Ariz. 10, 15, ¶ 9, 31 P.3d 123, 128 (App.2001) ("as is" provision in contract "generally operates only as a waiver of breach of warranty claims, not tort claims").

¶ 17 Turning to the language of the contract, we hold the verification provision bars Elm's claim for breach of warranty as to the square footage of the property. As noted, Elm alleges that outside the four corners of the contract, the sellers represented the home to be 3,792 square feet and that representation constituted a warranty. Assuming the truth of Elm's allegation that the sellers misrepresented the square footage of the home, the general warranty provision on which Elm relies, *supra* ¶ 14, must give way to the parties' specific agreement that "ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES ... IS APPROXIMATE" and that "IF SQUARE FOOTAGE IS A MATERIAL MATTER TO THE BUYER, IT MUST BE VERIFIED DURING THE INSPECTION PERIOD."

¶ 18 In interpreting a contract, we do not construe one term in a way that renders another meaningless. *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 478, ¶ 56, 224 P.3d 960, 975 (App.2010). As a corollary, each part of a contract must be read together, "to bring harmony, if possible, between all parts of the writing." *Gesina v. Gen. Elec. Co.*, 162 Ariz. 39, 45, 780 P.2d 1380, 1386 (App.1988). Finally, because specific contract provisions express the parties' intent more precisely than general provisions, specific provisions qualify the meaning of general provisions. *Technical Equities Corp. v. Coachman Real Estate Inv. Corp.*, 145 Ariz. 305, 306, 701 P.2d 13, 14 (App.1985); *see also Cent. Hous. Inv. Corp. v. Fed. Nat'l Mortg. Ass'n*, 74 Ariz. 308, 311, 248 P.2d 866, 867 (1952).

¶ 19 The representation Elm alleges the sellers made about the square footage of the home necessarily falls within the broad reach of the phrase "any reference to the square footage of the premises" in the verification provision. Pursuant to that provision, Elm agreed that any such representation was only approximate, and that if square footage was material to Elm, it was obliged to verify the size of the property.

¶ 20 We must construe the contract so as to give effect to the verification provision. We also are guided by the principle that a specific term of a contract usually qualifies a more general term. Applying these principles, we conclude the verification provision constituted a disclaimer of liability for any representation by the sellers as to the square footage of the property. Under that provision, Elm agreed that any representation by the sellers about the square footage of the home was "approximate" and could not be taken as true without verification. To give meaning to that term of the contract, we must conclude that it effectively prevents any representation by the sellers of the square footage of the home from constituting a warranty of the size of the premises.

¶ 21 Elm argues, however, that the superior court erred by dismissing the complaint without allowing it to offer evidence that it understood it could comply with the

verification provision simply by asking the sellers about square footage. Elm argues that once a "dispute develops" regarding a contract's meaning, the court must receive extrinsic evidence to ascertain the parties' intent. Mere disagreement about a contract's meaning, however, does not establish an ambiguity that requires admission of extrinsic evidence. *Chandler*, 175 Ariz. at 277, 855 P.2d at 791.

¶ 22 Interpreting the verification provision in context, we note that it appears in a subsection of the contract titled "Inspections," by which "Buyer acknowledges the benefit of, and the right to have" performed at its own expense, more than a dozen different "tests, surveys, and other studies ... to determine the value and condition of the Premises." The unifying theme of the subsection is that it establishes the buyer's right, at its own expense, to independently inspect and verify the characteristics of the property. Read in context, the subsection places squarely on the buyer the burden of discovering material facts that might be revealed by an inspection. The contract specifically provides that among the inspections the buyer is entitled to perform is an inspection to determine the "square footage" of the property.

¶ 23 Given its language and context, the verification provision is not reasonably susceptible to the interpretation Elm urges. Under the circumstances, "any reference to the square footage of the premises" must mean any reference *by or on behalf of the sellers*. That being the case, it would make no sense to construe the provision to mean the buyer should "verif[y]" a representation *by the sellers* about square footage by asking *the sellers* about the representation. Moreover, the provision warns "that any reference to the square footage ... must be verified during the inspection period." The provision's reference to "inspection period" supports the conclusion that the buyer should

perform its own inspection to verify the property's square footage.

¶ 24 In its reply brief, Elm argues that affirming the dismissal of its claims would mean that "no seller would be compelled to comply with purchase contracts or any common law requirement of truthful disclosure regarding square footage" and that "no plaintiff can pursue an Arizona lawsuit where a seller and the seller's real estate agent agree to falsely misrepresent and hide the square footage of a house." Not so. We merely hold that when the contract contains no express warranty of square footage and to the contrary, expressly warns the buyer to verify any representation about square footage, the buyer may not state a claim for breach of warranty based on an alleged extrinsic statement by the seller about the size of the property.[1]

### E. Denial of Motion for Leave to Amend.

¶ 25 Elm also argues the superior court erred when it denied its motion for leave to amend its complaint. "We review the denial of a motion to amend for an abuse of discretion." *Dube*, 216 Ariz. at 415, ¶ 24, 167 P.3d at 102. Leave to amend is discretionary but should be "freely given when justice requires." Ariz. R. Civ. P. 15(a).

¶ 26 A court does not abuse its discretion in denying a motion for leave to amend if the amendment would be futile. *Bishop v. State Dep't of Corr.*, 172 Ariz. 472, 474–75, 837 P.2d 1207, 1209–10 (App.1992). Elm's proposed amended complaint did not cure the defects in its original complaint. It did not present any new theories of recovery, nor did it allege additional facts that would have compelled a different interpretation of the contract.[2]

### CONCLUSION

¶ 27 For the foregoing reasons, we affirm the superior court's judgment dismissing the

---

1. On appeal, Elm does not address the dismissal of its claim for breach of the covenant of good faith and fair dealing. Issues not clearly raised and argued on appeal are waived. *Schabel v. Deer Valley Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App.1996).

2. Elm's proposed amendment merely emphasized its intent to rely on the defendants' alleged assertions regarding square footage and the contract's warranty provision.

complaint. In our discretion, we grant costs and reasonable attorney's fees to the sellers, pursuant to A.R.S. § 12–341.01(A), and costs on appeal to the brokers, both awards contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.[3]

CONCURRING: MICHAEL J. BROWN and JOHN C. GEMMILL, Judges.

---

3. After oral argument, counsel for the brokers filed a motion asking the court to publish its decision in this matter as an opinion. On its own motion, the court has determined to publish this decision as an opinion pursuant to Arizona Rule of Civil Appellate Procedure 28(b)(1), (4).

The motion to publish therefore is denied as moot.