NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

AVALON HILLS CONDOMINIUM ASSOCIATION, *Plaintiff/Appellee,*

*v.*

ROGER M. LANG, et al., *Defendants/Appellants.*

No. 1 CA-CV 21-0505
FILED 7-28-2022

---

Appeal from the Superior Court in Maricopa County
No. CV2020-051042
The Honorable Sara J. Agne, Judge

**AFFIRMED**

---

COUNSEL

McKeddie Cooley GP, Scottsdale
By Melanie C. McKeddie, Justin R. Cooley
*Counsel for Defendants/Appellants*

Phillips Maceyko and Battock PLLC, Scottsdale
By Kathryn A. Battock, Emily H. Mann
*Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1        Defendants Roger M. and Valeria Lang ("Langs") appeal from the superior court's judgment (1) awarding damages to plaintiff Avalon Hills Condominium Association ("Association"), and (2) finding that the damages could be assessed against the Langs' condominium unit. Because the Langs have not shown the court erred, we affirm.

## BACKGROUND

¶2        The Langs own Unit 270 in the Avalon Hills Condominiums development located in Phoenix, Arizona. Unit 270 is subject to the Condominium Declaration for the development ("Declaration"), which authorizes the Association to enforce its terms.

¶3        In January 2020, the Association sued the Langs, alleging several Declaration violations, including allowing (1) the accumulation of debris on and damage to their balcony, (2) transients to sleep on the patio, and (3) illegal activities on the premises. The Langs answered, contending "each complaint was acted on and resolved" and the Association "had the knowledge, authority, and ability to prevent subsequent infractions."

¶4        The Association moved for summary judgment, but the Langs did not respond. The superior court granted the motion and, in October 2020, entered a final judgment under Arizona Rule of Civil Procedure ("Rule") 54(c) (the "Original Judgment") that (1) included a permanent injunction directing the Langs to "bring Unit 270 into compliance with the Declaration on or before August 31, 2020, and then to continue keeping Unit 270 in compliance;" (2) granted the Association the ability to bring Unit 270 into compliance should the Langs not do so; (3) determined that "any monies expended" to bring Unit 270 into compliance "are, per Articles 5 and 7 of the Declaration, not only the personal obligation of [the Langs], but also, secured by a lien against Unit 270, and treated in the same manner as a past due Assessment as per Article 7.2.4 of the Declaration;" and (4) awarded the Association attorneys' fees and costs. The Langs did not

respond to the Association's subsequent attorneys' fees application or statement of costs.

¶5　　　　Several weeks later, the Association moved to supplement the Original Judgment, alleging the Langs were not complying with its terms. Specifically, the Association sought to recover fees it paid to a private security company to monitor the Langs' unit "in an effort to abate the illegal and nuisance causing activities caused by those occupying [the unit] and their guests/invitees." The Langs did not respond to that motion.

¶6　　　　The superior court entered a supplemental judgment awarding the private security costs and additional attorneys' fees (the "First Supplemental Judgment"). Consistent with the Original Judgment, the court ordered that the private security costs "shall be the personal obligation of [the Langs], and shall be secured by a lien against Unit 270, and treated in the same manner as a past due Assessment as per Article 7.4.2 of the [Declaration]." The court added that the First Supplemental Judgment's terms "shall not replace, but rather be incorporated into the amounts and terms awarded and entered in the [Original] Judgment." It also certified the First Supplemental Judgment as final under Rule 54(c).

¶7　　　　About a month later, the Association moved for an order to show cause and sanctions, contending the Langs had still had not complied with the Original Judgment. The Association sought to recover additional private security costs and attorneys' fees. Roger Lang attended the show cause hearing, at which the court continued the hearing and granted his request for additional time to file a written response to the Association's motion. In that response, the Langs argued they did not know about the Association's summary judgment motion or the Original Judgment. They also contended the Original Judgment was improper because they had answered the Association's complaint.

¶8　　　　The day before oral argument, the Association filed a separate motion asking the court to take judicial notice of an injunction against harassment entered against Cedrick Hamilton (the "Hamilton Injunction"), who the Association alleged was staying at the Langs' unit. The Langs filed a written response to that motion but did not challenge the substance of the Hamilton Injunction. They instead argued that the Association sued in bad faith in part because (1) Mr. Lang had "responded to every call from the [Association]" between 2015 and 2019, and (2) the Association had not called him at any point in 2020 about any problems. The Langs further contended the Association gave them "no opportunity to challenge the

3

claim for extra security – and no notice that security was even an issue, only a bill afterwards."

**¶9** After taking judicial notice of the Hamilton Injunction, the superior court granted the Association's motion for sanctions and found the Langs in civil contempt. In July 2021, the court entered a Second Supplemental Judgment awarding the Association additional private security costs and attorneys' fees. The court stated that the Second Supplemental Judgment would not "replace, but rather be incorporated into" the Original Judgment and certified the Second Supplemental Judgment under Rule 54(c). It also again ruled that the damages would be "the personal obligation of [the Langs], and shall be secured by a lien against Unit 270, and treated in the same manner as a past due Assessment as per Article 7.4.2 of the [Declaration]."

**¶10** The Langs appealed the Second Supplemental Judgment "and all related findings, minute entries, rulings, orders and judgments."[1]

## JURISDICTION

**¶11** We have an independent duty to determine whether we have jurisdiction over an appeal. *Dabrowski v. Bartlett*, 246 Ariz. 504, 511, ¶ 13 (App. 2019). We must dismiss those portions of an appeal over which we lack jurisdiction. *Natale v. Natale*, 234 Ariz. 507, 509, ¶ 8 (App. 2014).

**¶12** The failure to timely appeal deprives us of jurisdiction to review the superior court's decision. *Dowling v. Stapley*, 221 Ariz. 251, 264, ¶ 38 n.13 (App. 2009). The Association contends the Langs cannot challenge the Original Judgment or the First Supplemental Judgment because they did not timely appeal either one. Relying in part on *Maganas v. Northroup*, 135 Ariz. 573 (1983) and *In re the Gen. Adjudication of All Rights to Use Water In Gila River Sys. & Source*, 212 Ariz. 64 (2006), the Langs argue they can challenge the Original Judgment and First Supplemental Judgment because the Second Supplemental Judgment incorporates them by reference. Neither of these cases hold that incorporating or referencing an earlier Rule 54(c) judgment in a later Rule 54(c) judgment or order allows an untimely challenge to the earlier judgment.

---

[1] After the notice of appeal was filed, Avalon Hills filed a "First Supplemental Complaint" seeking to foreclose on its lien and impose a personal judgment against the Langs. The Langs' motion to dismiss the First Supplemental Complaint, filed in March 2022, remains pending.

¶13        Moreover, Rule 54(c) certification was not necessary for either supplemental judgment. Both state that their terms "shall not replace, but rather be incorporated into the amounts and terms awarded" in the Original Judgment. Both also required the Langs to pay private security costs the Association had incurred to date, and the Second Supplemental Judgment also found the Langs in contempt of the Original Judgment. As such, both were entered to enforce the Original Judgment and are "special order[s] made after final judgment" under A.R.S. § 12-2101(A)(2). *See Yee v. Yee*, 251 Ariz. 71, 75, ¶ 10 (App. 2021) (special orders made after final judgment must "affect 'the underlying judgment by enforcing it or staying its execution'" (quoting *Arvizu v. Fernandez*, 183 Ariz. 224, 226–27 (App. 1995))); *Williams v. Williams*, 228 Ariz. 160, 164, ¶ 14 (App. 2011) (an appealable special order "alters the legal rights or responsibilities of the parties" without "need for later court action").

¶14        Special orders entered after final judgment do not require Rule 54(c) certification to become final and appealable. *Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 429, ¶ 15 (App. 2016). As the Langs did not timely appeal the Original Judgment or the First Supplemental Judgment, they cannot challenge those judgments in this appeal. To the extent they seek to do so, this court lacks jurisdiction over such arguments. The Langs' notice of appeal was, however, timely as to the Second Supplemental Judgment. We therefore consider their arguments as they relate to the Second Supplemental Judgment.

**DISCUSSION**

**A.        Waiver**

¶15        The Langs raise four issues on appeal: (1) whether the superior court could award private security costs under the Declaration; (2) whether the Langs were given notice and an opportunity to be heard before the court awarded the private security costs; (3) whether the court properly determined the private security costs could be assessed against the Langs' unit, resulting in a lien; and (4) whether the court erred in taking judicial notice of and relying on the Hamilton Injunction.

¶16        The Association contends the Langs waived each of these issues by not raising them in the superior court. "Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal." *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994). But we do not

rigidly apply waiver; we instead may exercise discretion in determining whether to address waived arguments. *See, e.g.*, *Azore, LLC v. Bassett*, 236 Ariz. 424, 427, ¶ 7 (App. 2014).

**¶17**     The Langs' only response to the Association's waiver argument is that they cited in their opening brief "each instance where they argued in the trial Court that the monetary penalties the Association sought were excessive and unreasonable." Whether the private security costs were excessive or unreasonable does not pertain to any of the four issues listed above. In any event, the opening brief only cites (1) documents filed before any private security costs were assessed, and (2) two filings in which the Langs baldly contended the private security costs were "far in excess of any actual damages," "unreasonable," and "ridiculous."

**¶18**     Nonetheless, "[w]e recognize that courts prefer to decide each case upon its merits rather than to dismiss summarily on procedural grounds." *Adams v. Valley Nat. Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984). We therefore exercise our discretion to address the merits of the Langs' appeal.

### B.     Authority to Assess Private Security Costs

**¶19**     A recorded declaration that contains restrictive covenants common to all properties in a development forms a contract between the property owners as a whole and the individual owners. *Johnson v. Pointe Cmty. Ass'n, Inc.*, 205 Ariz. 485, 489, ¶ 23 (App. 2003). We review the interpretation of restrictive covenants and contracts de novo. *See ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010).

**¶20**     The Langs argue that only "maintenance, repair or replacement" costs can be assessed against an owner's unit, citing Section 5.4 of the Declaration:

> If a Unit Owner fails to maintain in good condition and repair his Unit . . . and the required maintenance, repair or replacement is not performed within fifteen (15) days after written notice has been given to the Unit Owner by the Association, the Association shall have the right, but not the obligation, to perform the required maintenance, repair or replacement. The cost of any such maintenance, repair or replacement shall be assessed against the nonperforming unit Owner pursuant to Subsection 7.2.4 of this Declaration.

But Section 7.2.4 provides that "[i]f any Common Expense is caused *by the misconduct of any Unit Owner*, the Association shall assess that Common Expense exclusively against [that] Unit." (Emphasis added.) *See* A.R.S. § 33-1255(E) (identical language). The Declaration defines "Common Expenses" as "expenditures made by or financial liabilities of the Association, together with any allocations to reserves," which is consistent with A.R.S. § 33-1202(9).

**¶21**      The Langs did not dispute the Association's evidence that it incurred the private security costs to try to remedy the ongoing transient problems at the Langs' unit. Thus, it was not error to conclude that the expenses were common expenses under Section 7.2.4. And while Section 5.4 specifically references maintenance, repair, and replacement costs, it does not bar the Association from assessing common expenses caused by the unit owner under Section 7.2.4. *See Terrell v. Torres*, 248 Ariz. 47, 50, ¶ 14 (2020) ("[W]e consider a provision's meaning in the context of the entire contract."). The court did not err in finding the Association could assess the private security costs against the Langs' unit.

### C.      Enforcement of Lien Rights

**¶22**      The Langs next contend the superior court erred in concluding that the private security costs would be treated as a past due assessment, thereby creating a lien in favor of the Association against the Langs' unit. They cite A.R.S. § 33-1256(A), which states in relevant part:

> Fees, charges, late charges, monetary penalties and interest charged pursuant to § 33-1242, subsection A, paragraphs 10, 11 and 12, other than charges for late payment of assessments, are not enforceable as assessments under this section.

The Langs argue the private security costs are "reasonable monetary penalties on unit owners for violations of the declaration, bylaws and rules of the association" under A.R.S. § 33-1242(A)(11) and, therefore the Association "has no statutory lien rights with respect to the security costs."

**¶23**      As discussed above, A.R.S. § 33-1255(E) and Section 7.2.4 of the Declaration allow common expenses caused by an owner's misconduct to be assessed against the owner's unit. Section 1.2.4 defines an "Assessment Lien" as a "lien granted to the Association by the Condominium Act to secure the payment of Assessments, monetary penalties and other charges owed to the Association." And "assessments" are defined as "the Common Expense Assessments . . . assessed against each unit pursuant to Article 7 of this Declaration."

¶24 The Langs did not challenge the Association's evidence that these security costs were rendered necessary by the Langs' failure to resolve ongoing transient issues at their unit; they only claimed the costs were "artificially created" and "far in excess of any actual damages[ ] and . . . therefore unreasonable." Thus, they have not shown the assessment of the private security costs as "common expenses" violated § 33-1256(A).

### D. Reasonableness of Security Costs

¶25 The Langs argue the Association "offered no proof . . . that the security costs [awarded in the Second Supplemental Judgment] were reasonable in relation to the violations the Association claimed existed at the Langs' Unit relating to improper balcony storage." The Association's community manager, Sheri Dunn, provided an affidavit that the Association "continued to receive complaints from Association members and residents regarding . . . illegal and nuisance-causing activities of the occupants and other transients coming and going from Units 270." Dunn further stated that while the Association had contracted with the Phoenix Police Department to provide courtesy patrol services, "the occupants of Unit 270 coordinate[d] their activities to take place when the courtesy patrol [was] not present." She also provided a supplemental affidavit in which she stated that the Association brought private security back because the "illegal and nuisance causing activities" resumed.

¶26 The Langs did not dispute any of Dunn's testimony; they instead blamed the Association for not calling Mr. Lang to resolve the issues while the litigation was ongoing. They also presented no evidence to support their contention that the private security costs were unreasonable or excessive. Thus, the Langs have not shown that the superior court erred in assessing the Association's evidence supporting the private security costs.

### E. Notice and an Opportunity to be Heard

¶27 The Langs assert they were not given "the required notice and opportunity to be heard" before the superior court entered the Second Supplemental Judgment. But they responded to the Association's motion that led to the Second Supplemental Judgment. And the only "notice" argument they asserted in that response was that Mr. Lang "rel[ied] on the [Association] to call . . . to resolve any issues."

¶28 The Langs' response also reflects an incorrect belief that they were not required to respond to any Association filings after answering the complaint. This erroneous belief does not excuse their failure to respond to

the Association's earlier motions. *See Flynn v. Campbell*, 243 Ariz. 76, 84, ¶ 25 (2017) (stating that "[i]gnorance of the law" is "not an excuse for noncompliance with procedural rules").

### F.  Second Supplemental Judgment

**¶29**        The Langs contend the Second Supplemental Judgment should be set aside because it was based on the Hamilton Injunction. The Hamilton Injunction, however, was not the only evidence the Association offered to show the Langs had not complied with the Original Judgment, nor was it the only evidence the superior court considered.

**¶30**        We also reject the Langs' companion argument that the court did not consider their response to the Association's request for judicial notice. The Langs cite the court's erroneous statement that they did not file written objections to the Association's proposed form of judgment. But the court specifically mentioned the Langs' response in its minute entry. Moreover, the Langs did not assert any arguments against the Association's judicial notice request in their response; instead, they said they "never want to see neighbors actually hurt or frightened."

**¶31**        The Langs also contend the court improperly "weighed the affidavits submitted by the Association" against "the Langs' testimony." Even assuming the arguments they raised in their responses constituted sworn testimony, those arguments largely pertained to events between 2015 and 2019 before the Association filed suit. They offered no evidence to show the private security fees, which the Association incurred while this case was ongoing, were excessive or unreasonable under the circumstances.

**¶32**        The Langs next argue that the court could not enter civil contempt sanctions without holding a hearing. The court held a show cause hearing and an oral argument before finding the Langs in civil contempt in the Second Supplemental Judgment. Mr. Lang attended both. The Langs also filed written responses to the Association's application and its request that the court take judicial notice of the Hamilton Injunction.

**¶33**        The Langs claim they did not receive notice or an opportunity to be heard before the Original Judgment was entered, citing Rule 65(f)(3)(B). As noted above, they did not timely appeal from the Original Judgment. Moreover, their superior court filings reflect their erroneous belief that they did not have to respond to any Association filings after answering the complaint. Regardless, Rule 65(f)(3)(B) would not apply because the Original Judgment did not hold the Langs in contempt or impose contempt sanctions. *See* Ariz. R. Civ. P. 65(f).

### G. Attorneys' Fees and Costs on Appeal

¶34 The Association requests attorneys' fees on appeal under Section 12.17 of the Declaration:

> In the event the Declarant, the Association or any Unit Owner employs an attorney or attorneys to enforce a lien or to collect any amounts due from a Unit Owner or to enforce compliance with or recover damages for any violation or noncompliance with the condominium documents, the prevailing party in any such action shall be entitled to recover from the other party his reasonable attorneys' fees incurred in the action.

Generally, we enforce a contractual attorneys' fees provision according to its terms. *Harle v. Williams*, 246 Ariz. 330, 333, ¶ 10 (App. 2019). The Association is the prevailing party in this appeal. It therefore may recover reasonable attorneys' fees and taxable costs incurred in this appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

### CONCLUSION

¶35 We affirm the Second Supplemental Judgment.

