NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ROBERT L. MAHANTI, Trustee of the Appalachian Residence Trust, dated November 28, 2022, *Plaintiff/Appellant*,

*v.*

ANDREW SCOTT FRASER and SARAH TERESE O'KEFFE, husband and wife; CRAIG FAULKNER and KARI FAULKNER, husband and wife; JOHN DOES I-X; JANE DOES I-X; ABC CORPORATIONS I-X; XYZ PARTNERS I-X, *Defendants/Appellees*.

No. 1 CA-CV 25-0069

FILED 12-03-2025

---

Appeal from the Superior Court in Coconino County
No. SO300CV202200391
The Honorable Joshua Steinlage, Judge

**AFFIRMED**

---

COUNSEL

Rose Law Group, PC, Scottsdale
By Shelton L. Freeman, Austin Moylan
*Counsel for Plaintiff/Appellant*

Matthew J. Mansfield, PLLC, Flagstaff
By Matthew J. Mansfield
*Counsel for Defendants/Appellees Fraser and O'Keffe*

Ellen B. Davis, PLC, Phoenix
By Ellen B. Davis
*Counsel for Defendants/Appellees Faulkners*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Samuel A. Thumma joined.

---

**C A T T A N I**, Judge:

¶1        Robert L. Mahanti, trustee of the Appalachian Residence Trust, appeals from the superior court's ruling dismissing claims with prejudice against Andrew S. Fraser and Sarah T. O'Keffe (the "Frasers") and Craig and Kari Faulkner (the "Faulkners") for failure to state a claim. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mahanti, the Frasers, and the Faulkners own adjacent real property in Flagstaff. Their properties are within the Shadow Mountain Village subdivision ("Shadow Mountain") and are subject to covenants, conditions, and restrictions ("CC&Rs") that run with the land. Mahanti asserted that the Frasers and Faulkners violated the CC&Rs by improperly reconfiguring the lots in a way that eliminated an unbuildable "orphan" parcel immediately south of Mahanti's property.

¶3        In 1987, the western portion of Lot 230 was deeded to the owner of bordering Lot 231. The balance of Lot 230 is known as "the orphan parcel." Mahanti purchased Lot 210, which shares a back boundary with Lot 230, in July 2000. The Faulkners purchased Lot 231 and a portion of Lot 230 in March 2002. The Faulkners acquired the remainder of Lot 230 in late 2009.

¶4        In May 2020, the Faulkners filed a "land division combination/split request" to move the boundary between the Lot 231 and Lot 230 parcels. This reconfiguration, reducing the size of Lot 231 and enlarging Lot 230, was processed and recorded in mid-2020. The Faulkners then sold Lot 230 to the Frasers in October 2021.

¶5           In August 2022, Mahanti sued the Frasers for breach of the CC&Rs and declaratory relief. In response, the Frasers moved to dismiss under Arizona Rule of Civil Procedure ("Rule") 12(b)(6), asserting that the lot line was moved by their predecessor-in-interest more than a year before they purchased the property and that they did not become subject to the CC&Rs until after they purchased the property. The court ordered Mahanti to bring in the Faulkners as an indispensable party, and Mahanti added them as defendants in August 2023.

¶6           Both the Faulkners and the Frasers then moved to dismiss. Mahanti's consolidated response in opposition relied primarily on Paragraph 4 of the CC&Rs, which states:

> None of said Lots shall be subdivided into smaller Lots, and no portion of any of said Lots or any easement or other interest therein shall be conveyed, leased or otherwise disposed of without the prior written approval of the Developer, be deemed to constitute a single Lot for the purposes of these restrictions.

¶7           After noting grammatical errors in Paragraph 4, the superior court concluded that Mahanti's claims were unavailing because the properties had not been subdivided into smaller lots. Accordingly, the court granted the motions to dismiss.

¶8           Mahanti moved for reconsideration, which the superior court denied. The court entered a judgment dismissing Mahanti's claims with prejudice and awarding the Frasers and the Faulkners attorney's fees and costs.

¶9           Mahanti timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶10         Mahanti asserts two main arguments on appeal. First, he argues that the superior court erred by dismissing his first amended complaint for failure to state a claim for breach of contract and declaratory

judgment. Second, he argues that the superior court erred by denying leave to amend.[1]

## I. Dismissal.

**¶11**       We review the superior court's dismissal under Rule 12(b)(6) de novo. *See Coleman v. City of Mesa*, 230 Ariz. 352, 355–56, ¶¶ 7–8 (2012). Dismissal on this basis is appropriate only if, assuming the truth of the complaint's well-pleaded factual allegations and indulging all reasonable inferences, the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* at 356, ¶¶ 8–9 (citation omitted). Although including conclusory statements does not invalidate a complaint, legal conclusions without supporting factual allegations do not suffice. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

### A. Breach of Contract.

**¶12**       A breach of contract claim requires proof that the contract existed, the defendant breached it, and the plaintiff suffered damages. *See Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96, ¶ 16 (2013). We review issues of contract interpretation de novo, aiming to determine and enforce the parties' intent in light of the contract as a whole and without rendering any part of the contract superfluous. *Elm Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290–91, ¶¶ 15, 18 (App. 2010). The contract language is the best guide to its meaning. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009); *Elm Ret. Ctr.*, 226 Ariz. at 290–91, ¶ 15.

**¶13**       Here, Mahanti asserts that the CC&Rs, to which the parties agree they are subject, prohibit subdividing lots and that the Faulkner's boundary line change was a "subdivision" and thus a breach of the CC&Rs. Mahanti alleged that (1) the Faulkners' 2020 reconfiguration moving the boundary line in effect subdivided the two lots and caused Lot 231 to be larger than what was approved and shown in the recorded plat; (2) the Faulkners knew this violated the CC&Rs; and (3) the Frasers knew the two lots violated the CC&Rs when they purchased Lot 230 from the Faulkners.

---

[1]       The Frasers did not file an answering brief. When the appellant raises a debatable issue, we may treat the failure to file an answering brief as a confession of reversible error. *Tucson Ests. Prop. Owners Ass'n v. Jenkins*, 247 Ariz. 475, 477–78, ¶ 6 (App. 2019); *DeLong v. Merrill*, 233 Ariz. 163, 166, ¶ 9 (App. 2013). We decline to do so here because Mahanti's claims against the Frasers fail for the same reasons as his claims against the Faulkners.

¶14 In dismissing these claims, the superior court noted that Mahanti provided no authority to support his position that moving the property line was a "subdivision" in violation of Paragraph 4 of the CC&Rs. The court relied on a legal dictionary defining "subdivide" to require a division of parts into more parts, *see Subdivision*, Black's Law Dictionary (12th ed. 2024) (noting that a subdivision is "[t]he division of a thing into smaller parts"), and concluded that the boundary line change here was not a subdivision.

¶15 Mahanti asserts that the superior court's interpretation of the CC&Rs was incorrect because the "ruling isolated a single, ten-word clause from the CC&Rs" rather than construing the CC&Rs as a whole. He also argues that the court should have considered other provisions that the parties noted in their briefing and at oral argument. But although Mahanti argues that other provisions of the CC&Rs were violated, he did not allege any such violations in his complaint.

¶16 Mahanti now argues that Shadow Mountain was designed with uniform lots that complement one another and that the CC&Rs require homeowners to maintain consistency throughout the subdivision. In support of this argument, he quotes part of the CC&Rs' statement of intent to "carry out a general scheme of improvement and development which will complement and enhance this natural beauty" and "to guide the development and use of [the subdivision] so that it will continue to be in harmony with and appear indigenous to its natural surroundings." Mahanti asserts that the Faulkners' 2020 reconfiguration violated these directives because it made Lot 230 "just large enough to be buildable" but not "large enough to make it uniform with the other Lots."

¶17 Mahanti's argument fails. These CC&R provisions simply express an intent that development complement the "natural beauty" of the landscape and remain "in harmony with and appear indigenous to" the natural surroundings. They do not require that the lots be uniform.

¶18 Mahanti also points to Paragraph 15 of the CC&Rs, claiming that it gives the original developer sole authority to change the size and shape of lots (and thus prevents individual owners from doing so), which in his view "reflects the notion that Lot sizes and shapes should remain unchanged." Paragraph 15 does not, however, state that the lot sizes and shapes could not be changed, instead confirming that the developer had the right to do so:

> [T]he Developer *shall have the right to change the size and shape of the Tracts and unsold Lots* in this Subdivision where the Developer makes a finding that the size or shape of any of said Tracts or Lots would work an undue hardship, or where a variation thereof would be in the best interests of the Owners and Subdivision as a whole . . . .

(Emphasis added.) The fact that the developer had the right to change the size and shape of *unsold* lots negates an assertion that the development was intended to have uniform, unchanged lots. More importantly, that provision compels the conclusion that subsequent owners of purchased lots could not reconfigure the lots in a way that does not subdivide the lots to create additional lots. Accordingly, Mahanti's argument is unavailing.

¶19        Mahanti also argues that lot owners must obtain approval from neighboring owners before making any changes, including boundary line changes. But he does not point to any language in the CC&Rs that establishes such a requirement. Mahanti notes that Paragraph 3 requires the *developer's* written permission for certain construction and improvements, but this provision makes no mention of other owners' permission for changes made after the developer concluded its operations. Paragraph 15's requirement that owners of 2/3 of the lots must agree to any changes to the CC&Rs is similarly inapplicable because the Frasers and Faulkners have never sought to amend the CC&Rs.

¶20        Finally, Mahanti asserts that the superior court did not address the second clause of Paragraph 4, which provides that "no portion of any of said Lots . . . shall be conveyed, leased or otherwise disposed of without the prior written approval of the Developer." But Mahanti's complaint did not allege a breach of the second clause, and in any event, failing to reference the provision in the ruling does not mean that the superior court failed to consider the contract in its entirety. For the first time on appeal, Mahanti argues that because Paragraph 4's second clause limits partial conveyance of lots, it reflects a requirement that lots be uniform (unless the developer approved otherwise). But Mahanti again fails to explain how this provision applies to lot owners who reconfigure lots without subdividing them to create an additional lot. Accordingly, he has not established a right to relief under Paragraph 4 of the CC&Rs.

## B.    Declaratory Judgment.

¶21        Mahanti argues the superior court erred by dismissing his request for a declaration that the Faulkners violated the CC&Rs by

"subdividing" Lot 230 and Lot 231. *See* A.R.S. § 12-1832 (authorizing a declaratory judgment action to declare the rights of a person "interested under" or "affected by" a contract). But as discussed above, Mahanti failed to state a claim that the boundary-line shift constituted a "subdivision," so his request for a declaration that the Faulkners violated the CC&Rs necessarily fails.

## II.    Leave to Amend.

**¶22**         We review the denial of leave to amend for an abuse of discretion. *Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517, 519, ¶ 4 (App. 2013). "Leave to amend must be freely given when justice requires." Ariz. R. Civ. P. 15(a)(2). The court nevertheless has discretion to deny leave to amend if, for example, a proposed amendment would not cure the pleading defect or would otherwise be futile. *Tumacacori Mission*, 231 Ariz. at 519, ¶ 4; *see also Dube v. Likins*, 216 Ariz. 406, 415, ¶ 25 (App. 2007). "A party moving for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion." Ariz. R. Civ. P. 15(a)(4).

**¶23**         Mahanti argues that he sought leave to amend in his consolidated response to the motions to dismiss and in his motion for reconsideration. But Mahanti did not submit a copy of the proposed amended pleading as procedurally required by Rule 15(a)(4), leaving the superior court without a basis to determine whether the amended complaint would cure the defects warranting dismissal.

**¶24**         Moreover, Mahanti's request was substantively deficient. Simply put, Mahanti asserted that other provisions in the CC&Rs (beyond Paragraph 4's prohibition on subdivision) were implicated and "potentially violated" by the boundary line shift, and he proposed permitting amendment to add these new theories of breach. But the other provisions he cited (the same ones he has now urged on appeal) do not revive his breach of contract claim. Amendment is generally permissible when it "seeks no more than to add a new legal theory supported by factual issues already in the case." *Owen v. Superior Court*, 133 Ariz. 75, 80 (1982). But Mahanti's new theories of breach fail for the reasons described above, *see supra* ¶¶ 16–20, so his request to amend was futile.

**¶25**         Accordingly, the superior court did not abuse its discretion by denying leave to amend.

## III.    Attorney's Fees on Appeal.

**¶26**        Mahanti requests an award of attorney's fees on appeal under Paragraph 14(b) of the CC&Rs and A.R.S. § 12-341.01.   The Faulkners request a fee award under the CC&Rs, A.R.S. §§ 12-341.01(A) and -349, and ARCAP 25.

**¶27**        Paragraph 14 of the CC&Rs discusses owners' remedies in the event of a breach of the CC&Rs by another owner, including an award of attorney's fees to an owner who prosecutes a legal action against the "defaulting" owner.   We enforce contractual fee-shifting provisions according to their terms.  *Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 13, ¶ 17 (App. 2011).

**¶28**        Neither side is entitled to an award under Paragraph 14. Mahanti did not prove the Faulkners had breached the CC&Rs, so he did not prove they were "defaulting" owners liable for fees under Paragraph 14(b).  Likewise, although the Faulkners prevailed in superior court and on appeal, they were not prosecuting a legal action against a "defaulting" owner.  By its terms, the CC&Rs' fee provision does not apply.

**¶29**        Section 12-341.01(A) permits a discretionary award of reasonable fees to the prevailing party in a contested action arising out of contract.  *See Nat'l Broker Assocs., Inc. v. Marlyn Nutraceuticals, Inc.*, 211 Ariz. 210, 218, ¶ 39 (App. 2005).  The parties do not dispute that this action arises out of contract.  Mahanti has not prevailed on appeal, so we deny his request.  Because the Faulkners are the prevailing party on appeal, and in an exercise of our discretion, we award them reasonable attorney's fees under A.R.S. § 12-341.01 upon compliance with ARCAP 21.  The Faulkners are entitled to an award of taxable costs on appeal, also upon compliance with ARCAP 21.

## CONCLUSION

**¶30**        For the foregoing reasons, we affirm the superior court's dismissal of Mahanti's complaint and denial of leave to amend.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR